SCHULTZ, Respondent, v. MUELLER, Appellant.

*No. 272. Argued May 6, 1968.—Decided June 4, 1968.*
(Also reported in 159 N. W. 2d 63.)

For the appellant there was a brief and oral argument by *Stephen J. Hajduch* of Milwaukee.

For the respondent there was a brief by *D'Amato, Scherba & Nettesheim,* and oral argument by *James J. Caldwell,* all of Waukesha.

HANLEY, J. Defendant contends that she should be granted a new trial: (1) Because the jury verdict was perverse as being contrary to the law and to the evidence; and (2) in the interest of justice.

The defendant put in evidence tending to show that the driveway was graded in a defective manner so that the driveway gate on the fence surrounding her property would no longer open inward and that the driveway was already cracked. (The trial occurred roughly two years after Mr. Schultz ceased working on the defendant's premises.) There was also testimony tending to show that the agreement called for a two-level patio although the patio as built contained only one level. In addition,

sand was washing away from under the patio blocks; and the blocks had become uneven.

An expert witness for the defendant, Paul Yuker, a contractor, gave testimony concerning both the driveway and the patio. He stated that the driveway could have been constructed so that the gate would open inward by establishing a steeper grade for the first 40 feet and a lesser grade for the last 20 and that the cracks were the result of the improper placement of expansion joints. In his opinion the driveway was constructed "sloppily" and without a grade having been established. He estimated that it would cost the defendant $900 to correct the situation, for the present driveway would have to be removed and a new one constructed. With respect to the patio, Yuker testified that very few of the blocks were even with each other, and the sand has washed out from under the blocks, the result being that the blocks themselves have almost washed away. He stated that he could not see that any provision had been made for drainage. In his opinion the patio would have to be done over in order to achieve the proper result, which would require the reestablishment of a grade and the construction of a retaining wall. He estimated the cost of rebuilding the patio at from $600 to $700.

The plaintiff's testimony tended to show that in installing the driveway he had to work with the existing grade of the gravel driveway that had been previously installed unless the south half of the front yard was to be resodded. Further, he testified that the fence gate was an adjustable type, but that defendant objected to the adjustment because it would allow her pet dog to escape from her yard. He also maintained that while the parties at one time considered a two-level patio, defendant concurred in his suggestion to construct the patio with one level only. He also testified that he installed a drainage pit seven or eight feet from the west end of the rear of the garage and put in pipes from the downspout to the pit. Concerning defendant's complaint that sand and

gravel were washing away, plaintiff testified that he had originally corrected the situation but that it could recur until the ground settles. According to him the way to correct it is to put in additional drainage stone and to restore the patio blocks to the level of the established grade. He indicated that no retaining wall was constructed for the patio because it was not figured in the price for which he agreed to do the work.

Three expert witnesses, Nick Chenenoff, William Hingiss, and George Campfield, all of them contractors, testified on behalf of the plaintiff. Chenenoff observed both the driveway and the patio and testified that both were constructed in workmanlike fashion. In his opinion the sand and gravel washed away from underneath the patio blocks because of the settling process. Hingiss and Campfield both testified that the driveway was constructed in a workmanlike manner.

Against this backdrop of conflicting evidence, defendant contends that plaintiff should not be allowed to recover the entire unpaid balance of the contract price because expert witnesses for both sides conceded that more work was needed to be done to complete the contract. In addition to the previously recounted testimony of Yuker, she calls the court's attention to Campfield's testimony that the patio could be repaired at a cost of $35 and to Chenenoff's testimony that the cracks in the driveway could be repaired for $10. Further, she contends that a letter from Mr. D'Amato, one of plaintiff's attorneys, to Mr. Hajduch, defendant's attorney, constitutes an admission that plaintiff never completed the contract.

The circumstances under which such testimony was elicited indicate that the plaintiff's experts made no concession of any kind in testifying to such dollar amounts. The testimony was given on rebuttal—after Mr. Yuker testified that remedying the defects in workmanship would cost from $1,500 to $1,600. The questions eliciting

the dollar amounts were qualified in such a manner to show that no concession was intended.[1]  The testimony of the plaintiff's experts was not only important to the issue of the amount of damages provable under defendant's counterclaim but also to his own recovery; for, if the trier of fact were to believe that defects existed and believed plaintiff's rather than defendant's estimates as to the cost of repair, recovery might have been had by the plaintiff under a theory of substantial performance for the balance of the contract price, minus any damages caused by any defects in performance.  In that event, defendant's counterclaim insofar as it sought recovery for the failure to perform the contract would have had to be dismissed.

The letter in question suggested that plaintiff would do what is necessary to complete the work provided that the defendant would place the money due him in escrow. The letter was placed in evidence by the plaintiff along with a letter from Mr. Hajduch to Mr. D'Amato apparently to show that the defendant continuously denied the plaintiff access to the property.  It is doubtful that this attempt to settle the dispute was intended to admit any facts; and conceding for the purposes of a discussion only that it was an admission, it would be for the trier of fact to weigh along with the other evidence.

---

[1] Mr. Campfield testified as follows:

"*Q.* Can you estimate the amount of time it would take to remedy the patio blocks, and fill, if necessary, and replace the patio blocks?  *A.* I would assume four hours.

"*Q.* Do you know what the fair and reasonable cost of that work is?  *A.* Possible $35.00."

On recross-examination the $35 figure was mentioned again.

"*Q.* So you would do this job for $35.00?  *A.* Approximately."

Mr. Chenenoff testified as follows:

"*Q.* Do you have an opinion how much it might cost to correct those cracks if they exist?  *A.* Not being able to view the cracks, it is hard to say, if they are hairline cracks, it would be no more than one hour work, and possibly you could fix them with latex, that's all that would be necessary."

It appears that the main dispute between the parties with respect to the work done pursuant to the contract was not so much over the existing condition of the improvements (although the testimony varies as to the condition of the driveway), but rather over whether their condition indicated that Mr. Schultz performed his work in a workmanlike manner. In this the evidence was in sharp dispute. The trier of fact chose to believe the plaintiff's rather than the defendant's evidence. It could have concluded that the driveway gate being adjustable, its failure to open inward did not constitute a defect; it could have concluded that plaintiff was justified under the contract in using the existing grade in the construction of his driveway. It may have found that the driveway cracks were not substantial or that they were not caused by faulty construction on the part of the plaintiff. Concerning the patio, it could have considered that a retaining wall was not contracted for and that the washing away of the sand and gravel was due to normal settling and therefore not the responsibility of the plaintiff. In sum, there was ample credible evidence to sustain a finding of fact favoring either the plaintiff or the defendant on the question of workmanlike performance. Since the conclusion reached was that the performance was workmanlike, awarding the plaintiff the balance of the contract price as damages is also sustained by the evidence.

We conclude that the evidence sustains the disposition of the defendant's counterclaim and the claim of the plaintiff for "extras." What has been said above applies to the defendant's counterclaim inasmuch as it seeks damages for failure to perform the contract. Defendant also sought recovery for damages allegedly caused by the plaintiff in using her Rototiller and in appropriating her rock garden stones for constructing the patio. Suffice it to say that the evidence was conflicting on these matters and therefore sustains the trier of fact's disposi-

tion of them. Plaintiff's claim for "extras" was in the amount of $299.50. The trial court awarded him $195. No detailed findings of fact were made, but again the evidence as to whether the claimed "extras" were (a) agreed to, and (b) furnished, is in dispute. We think the following statement in *Garstka v. Russo* [2] is applicable:

". . . This court must frequently speculate how a jury or a court arrived at its findings, but this is not objectionable and does not prove the trier of the facts speculated in its fact-finding process. It is the function and the duty of the finder of the facts to find where the truth lies when the evidence is conflicting, as it is here. The findings of the trial court must be sustained."

It is the well established rule of this court that the verdict of a jury, when it is approved by the trial court, as here, will be sustained when there is credible evidence to support it.[3]

We conclude that the verdict is sustainable under the evidence and that the trial court was within its discretion in denying defendant's motion for a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.

[2] (1967), 37 Wis. 2d 146, 152, 154 N. W. 2d 286.

[3] *Kreklow v. Miller* (1967), 37 Wis. 2d 12, 19, 154 N. W. 2d 243; *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 372, 127 N. W. 2d 264.