STATE of Wisconsin, Plaintiff-Respondent,

v.

David C. GILLES, Defendant-Appellant.

Court of Appeals

*No. 92–0528–CR. Submitted on briefs October 1, 1992.—Decided December 2, 1992.*

(Also reported in — N.W.2d —.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Peter John Hoeper* of Waupun.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas L. Storm* district attorney of Fond du Lac county.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J. David C. Gilles appeals from a judgment of conviction for party to the crime of defamation, contrary to secs. 939.05 and 942.01(1), Stats. Gilles primarily argues that he is entitled to a new trial because the circuit court failed to instruct the jury on his affirmative defense of "conditional privilege." He also challenges certain of the court's evidentiary rulings and its refusal to grant the jury's request to see the criminal complaint during its deliberations.

We conclude that the circuit court properly refused to instruct the jury on Gilles' conditional privilege defense because Gilles abused the privilege by disseminating the defamatory matter to persons not privileged to receive it. We are also not persuaded by any of Gilles' additional arguments. Therefore, we affirm the judgment of conviction.

Gilles was charged as party to the crime of criminal defamation for typing and distributing numerous anonymous defamatory letters about Russ Kamphuis, the president of the local Bank One office in the community where Gilles lived. Gilles' alleged motive for defaming Kamphuis was that the bank had foreclosed on the loan of one of Gilles' close friends. The criminal complaint alleged that Gilles was responsible for typing the letters because of the double capitalized words and the misspellings of Kamphuis' name that appeared in both the defamatory letters and in correspondence Gilles was known to have typed. At trial, however, the state sought only to establish that Gilles was responsible for disseminating the letters.

The state called as a witness the police detective who investigated the crime. On cross-examination, Gilles sought to question the detective about the contents of an internal department memorandum which documented a telephone conversation between another

officer and a typography analyst at the state crime laboratory. The memorandum revealed that the crime laboratory was unable to confirm that Gilles was the author of the letters because neither the originals nor the typewriter used to type the letters had been recovered. The court sustained the state's hearsay objection, rejecting Gilles' argument that the testimony was admissible under either the "business records" or "public records" hearsay exceptions. The court also refused to allow Gilles to question the detective about a letter drafted by the state during plea negotiations which misspelled Kamphuis' name. The letter, which documented an offer by Gilles to take a polygraph examination, was offered by Gilles to rebut the state's assertion that the misspelling of Kamphuis' name was unique.

The state also called as a witness John Schumacher, the Bank One executive vice-president in charge of the branch bank where Kamphuis worked. Schumacher testified that Gilles had sent him copies of numerous defamatory letters about Kamphuis, accompanied by cover letters which explained that the letters were circulating within the community. The cover letters also informed Schumacher of Gilles' concern that Kamphuis was disclosing confidential customer information, engaging in unethical banking practices, and harassing one of Gilles' close friends. Schumacher testified that although his investigation of Gilles' complaints revealed no misconduct on the part of Kamphuis, he nevertheless considered the correspondence to be confidential.

During Gilles' case-in-chief, several witnesses were called to testify about his character for truthfulness. However, one of the witnesses, Paul Servais, testified that Gilles gave him a copy of one of the letters. Another witness, Gerald Hubert, testified that Gilles gave him

several copies of the anonymous letters and that the two of them discussed the letters.

Gilles also testified. He denied responsibility for typing the letters and stated he had received copies of the anonymous letters in the mail. On cross-examination, however, he admitted sending copies of these letters to the Commissioner of Banking for the State of Wisconsin, Congressman James Sensenbrenner, Senator Herb Kohl, and the Federal Deposit Insurance Corporation (FDIC). He also testified that he showed copies of the letters to Servais, Hubert, his wife, and members of his immediate family such as his brother and sister.

While deliberating, the jury asked to see a copy of the criminal complaint. The circuit court denied the request, reasoning that the complaint would be misleading and serve only to foster confusion. The jury subsequently convicted Gilles. The court imposed a two-year period of probation and a $1500 fine. Gilles appeals.

## CONDITIONAL PRIVILEGE

Gilles argued at the jury instruction conference that because of Schumacher's testimony, the trial court should include in the jury instructions the second paragraph of the standard defamation instruction which states that [t]he crime of defamation is not committed . . . if the communication was otherwise privileged. Wis J I—Criminal 1380. The circuit court denied the request, ruling that Gilles' conditional privilege defense was not supported by the evidence.

Gilles relies primarily on *Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 440 N.W.2d 548 (1989), which endorses the language of the RESTATEMENT (SECOND) OF TORTS (1976) in the context of civil defamation. The Restatement recognizes that the existence of a conditional privilege in a number of different situations acts

108

as a defense to an otherwise actionable defamation. *Zinda,* 149 Wis. 2d at 922, 440 N.W.2d at 552. Among these are statements made on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest. *Id.* The Restatement defines the common interest giving rise to the privilege:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

RESTATEMENT (SECOND) OF TORTS, sec. 596 (1976).

Gilles' argument is that he sent the letters to Schumacher because he had accounts at the bank where Kamphuis worked and was concerned that Kamphuis' actions would affect the bank's stability. Gilles contends that he shared with Schumacher a common interest in the financial viability of the bank. Thus, Gilles concludes that the anonymous letters he sent to Schumacher were privileged. Consequently, Gilles urges us to hold that the circuit court erred by failing to instruct the jury on his conditional privilege affirmative defense.

The state maintains that the relationship between Gilles and Schumacher is too tenuous to establish a common interest such as that described in *Zinda* and similar civil cases. It argues that *Zinda* recognized the existence of the privilege in the context of an employer-employee relationship, and that extending the privilege to a relationship as remote as Gilles' and Schumacher's would render the privilege meaningless. Alternatively, the state argues that *Zinda* and its progeny are inapposite because

they deal with the defense only in the context of civil defamation.

We first address whether the conditional privilege as recognized in the civil law of defamation applies in the context of the criminal law of defamation.

Section 942.01, Stats., states in relevant part:

**Defamation. (1)** Whoever with intent to defame communicates any defamatory matter to a third person without the consent of the person defamed is guilty of a Class A misdemeanor.

**(3)** This section does not apply if the defamatory matter was true and was communicated with good motives and for justifiable ends or *if the communication was otherwise privileged.* [Emphasis added.]

A question as to the meaning of a statute presents a question of law which this court reviews *de novo. State v. Robinson,* 140 Wis. 2d 673, 676, 412 N.W.2d 535, 537 (Ct. App. 1987). The purpose of our review is to ascertain the intent of the legislature, and we must first resort to the plain language of the statute itself. *In re J.A.L.,* 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). If the language clearly and unambiguously sets forth the legislature's intent, we are prohibited from looking beyond the language to ascertain the statute's meaning. *Id.* If the language does not clearly or unambiguously set forth the legislature's intent, we may look to sources outside the language of the statute such as the history, context, subject matter, scope and object of the statute. *Id.* at 962–63, 471 N.W.2d at 502.

Neither sec. 942.01, Stats., nor case law instructs whether the defense of conditional privilege as recognized in the civil tort of defamation and as addressed in

the Restatement is applicable under the criminal defamation statute. The statute merely provides that defamation is not committed if the communication is privileged. Thus, we conclude that the unexplained reach of this privilege renders the statute ambiguous.

■

The legislative history of sec. 942.01, Stats., however, convinces us that the defense of conditional privilege as recognized in the civil law applies to the crime of defamation. In 1953, the Legislative Council submitted its report and proposed amendments for the redrafting of the criminal code by the 1955 legislature. *See* sec. 1, ch. 623, Laws of 1953. The Legislative Council's note to the criminal defamation statute, then numbered sec. 342.01, Stats. (1953), states in relevant part:

> There are situations in which the communication of defamatory matter is not criminal. . . . The communication is not criminal if the defamatory matter was true and communicated with good motives and for justifiable ends. . . . Nor is the communication criminal if it was otherwise privileged. . . . [T]he common-law privileges relating to defamation are preserved. In general they are the same as the privileges relating to civil law defamation. See *Restatement, Torts,* sec. 585 to 612 (1934).

Legislative Council Comment, 1953, sec. 342.01, Stats.

Despite our conclusion that the conditional privilege defense applies to the crime of defamation, we nonetheless reject Gilles' argument that the circuit court erred by failing to instruct the jury as to this privilege under the facts of this case.

■

Our supreme court recognized in *Zinda* that conditional privilege is not absolute and may be forfeited if the privilege is abused. *Zinda,* 149 Wis. 2d at 924, 440

111

N.W.2d at 553. The privilege may be abused because: (1) of the defendant's knowledge or reckless disregard as to the falsity of the defamatory matter, (2) the defamatory matter is published for some purpose other than that for which the particular privilege is given, (3) the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege, (4) the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged, or (5) the publication includes unprivileged as well as privileged matter. *Id.* at 924-25, 440 N.W.2d at 553 (citing RESTATEMENT (SECOND) OF TORTS, secs. 600-605A (1976)). Whether a conditional privilege has been abused is a factual question for the jury unless only one conclusion can reasonably be drawn. *Id.* at 926, 440 N.W.2d at 553-54.

Even if we were to conclude that Gilles' relationship with Schumacher gave rise to a conditional privilege, we hold that Gilles abused the privilege as a matter of law in this case. By his own testimony, Gilles admitted that he disseminated the defamatory letters to persons outside the privilege loop, i.e., family members and friends. Gilles thus abused the privilege by disseminating the defamatory letters to persons *not necessary for the accomplishment of the purpose of the privilege*—protecting the bank's stability.[1] We therefore hold that the circuit court properly refused to instruct the jury on Gilles' conditional privilege defense.

---

[1] Therefore, we do not directly address the state's argument that Gilles' relationship with Schumacher was too tenuous to allow for application of the conditional privilege.

Gilles next raises some evidentiary issues. The circuit court's decision to admit or exclude evidence is a discretionary determination that will be upheld on appeal absent an abuse of discretion. *State v. Whittemore*, 166 Wis. 2d 127, 136, 479 N.W.2d 566, 571 (Ct. App. 1991).

Gilles first argues that a police report, offered to rebut the state's assertion that the misspelling of Kamphuis' name was unique, was admissible under either the business records or public records hearsay exceptions. We disagree.

Section 908.03(6), Stats., the so-called business records exception, allows the introduction of memorandum made in the course of a regularly conducted activity, which includes police reports.[2] *Mitchell v. State*, 84 Wis. 2d 325, 330, 267 N.W.2d 349, 352 (1978). The rule requires, however, that all of the declarants involved in the making of the memorandum be part of the organization which prepared it. *See id.;* sec. 908.03(6). If one of the declarants is not part of the organization, an additional level of hearsay is presented which must fall

---

[2] Section 908.03, Stats., states in relevant part:

**Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . ..

**(6)** RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

within some other exception. *Id.;* sec. 908.05, Stats. *See also* 7 D. BLINKA, WISCONSIN PRACTICE, EVIDENCE sec. 803.06, at 481 (1991).

Here, Gilles sought to question a police detective about a department memorandum which documented a telephone conversation between a police lieutenant and a typography analyst at the state crime lab, neither of whom testified at the trial. Although the police lieutenant was a member of the department which prepared the memorandum, the typography analyst clearly was not. Consequently, absent an additional exception to cover the typography analyst's statement contained within the memorandum, the circuit court properly held the memorandum testimony inadmissible.

We similarly reject Gilles' related argument that the memorandum was admissible under sec. 908.03(8), Stats.,[3] the exception which covers public records and reports. As already discussed, the memorandum contained multiple levels of hearsay; the statement of the police lieutenant represented by the report itself, and the statements of the typography analyst from the crime lab described therein. Consequently, Gilles was obliged—as he was under the business records exception—to qualify the statements of the typography analyst under some other exception to the hearsay rule. *See* sec. 908.05,

---

[3] Section 908.03(8), Stats., states:

PUBLIC RECORDS AND REPORTS. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Stats.; *see also Boyer v. State,* 91 Wis. 2d 647, 661-62, 284 N.W.2d 30, 35–36 (1979).

Gilles next argues that the circuit court should have allowed him to cross-examine the police detective about a letter drafted by the state during plea negotiations which misspelled Kamphuis' name. The letter documented an offer by Gilles to take a polygraph examination.

When the state objected to this line of cross-examination, an unreported side bar conference took place between the court and counsel. When the proceedings resumed on the record, Gilles did not pursue this matter and the court made no ruling on the objection. Now, on appeal, Gilles asks us to overturn an evidentiary ruling which the trial court never made.

We properly decline to review an issue on appeal when the appellant has failed to give the trial court fair notice that it is raising a particular issue and seeks a particular ruling. *State v. Salter,* 118 Wis. 2d 67, 79, 346 N.W.2d 318, 324 (Ct. App. 1984). Here, after the state's objection and the discussion off the record, Gilles' cross-examination of the detective went off on a different tack. Gilles never asked the court to rule on the state's objection. We deem this particular issue waived.

As an adjunct to this issue, Gilles also argues that the trial court erred by refusing to admit the letter itself into evidence (as opposed to barring the cross-examination). As one of his appellate grounds, Gilles argues that the letter offering to submit to a polygraph examination is relevant to credibility, and he cites *State v. Hoffman,* 106 Wis. 2d 185, 217, 316 N.W.2d 143, 160 (Ct. App. 1982), in support. At trial, however, Gilles did not offer the letter as probative of his credibility. He has waived this appellate issue.

Instead, at the close of the evidence, Gilles offered the letter to show that the misspelling of Kamphuis' name was not unique. We acknowledge that the state put in evidence of Gilles' alleged writings which included the misspelling of Kamphuis' name. However, we fail to see the relevance of the letter which would have showed that the state was prone to the same spelling mistake. The critical issue at trial was whether Gilles communicated the defamatory letters—not whether third parties would have made a similar spelling error. We conclude that the circuit court did not misuse its discretion when making this evidentiary ruling.

## JURY'S REQUEST TO SEE THE CRIMINAL COMPLAINT

Finally, Gilles asserts that the circuit court erred by denying the jury's request to see the criminal complaint. The criminal complaint alleged that Gilles was responsible for typing the defamatory letters. Because the special verdict asked the jury to determine his guilt for criminal defamation *as alleged in the complaint,* Gilles argues that the jury should have been allowed to see the complaint. We disagree.

The court held that the complaint would have served only to mislead the jury. The circuit court is vested with broad discretion in the matter of allowing evidence to go to the jury during its deliberations, *Schnepf v. Rosenthal,* 53 Wis. 2d 268, 272, 193 N.W.2d 32, 35 (1972), and we will uphold the circuit court's discretionary determinations absent an abuse of discretion. *See Whittemore,* 166 Wis. 2d at 136, 479 N.W.2d at 571.

■■■■■■ A criminal complaint is not an exhibit or evidence; it is only a charging document. Its essential function is informative—to set forth sufficient facts from which a reasonable person could conclude that a crime was probably committed and that the defendant probably committed it. *State v. Fawcett,* 145 Wis. 2d 244, 250, 426 N.W.2d 91, 94 (Ct. App. 1988). The criminal complaint here may well have contained information not received as evidence at the trial. As such, the circuit court was properly concerned that the complaint might mislead the jury. We thus conclude that the circuit court properly denied the jury's request.

*By the Court.*—Judgment affirmed.