STATE of Wisconsin, Plaintiff-Respondent,

v.

Luis CARDENAS-HERNANDEZ, Defendant-Appellant.†

Court of Appeals

*No. 96–3605–CR. Submitted on briefs August 8, 1997.—Decided October 2, 1997.*

(Also reported in 571 N.W.2d 406.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

VERGERONT, J. Luis Cardenas-Hernandez appeals from a judgment of conviction of two counts of criminal defamation in violation of § 942.01, STATS.,[1] and two counts of perjury in violation of § 946.31, STATS.,[2] all counts enhanced for habitual criminality

---

[1] Section 942.01, STATS., provides:

Defamation. (1) Whoever with intent to defame communicates any defamatory matter to a third person without the consent of the person defamed is guilty of a Class A misdemeanor.

(2) Defamatory matter is anything which exposes the other to hatred, contempt, ridicule, degradation or disgrace in society or injury in the other's business or occupation.

(3) This section does not apply if the defamatory matter was true and was communicated with good motives and for justifiable ends or if the communication was otherwise privileged.

(4) No person shall be convicted on the basis of an oral communication of defamatory matter except upon the testimony of 2 other persons that they heard and understood the oral statement as defamatory or upon a plea of guilty or no contest.

[2] Section 946.31, STATS., provides:

Perjury. (1) Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following, whether legally constituted or exercising powers as if legally constituted, is guilty of a Class D felony:

77

under § 939.62, STATS. Cardenas-Hernandez contends on appeal that under § 942.01 all statements made in judicial proceedings are absolutely privileged, and therefore the two defamation convictions must be reversed. We agree and reverse those two convictions. Cardenas-Hernandez also contends that the trial court erroneously exercised its discretion in: (1) excluding a prosecutor's in-court statement from a prior proceeding to show that he (Cardenas-Hernandez) did not intend to make a false statement and that the statement was not false; (2) excluding the transcript of another prosecutor's statement in another prior proceeding on the credibility of a witness for the State in these proceedings; and (3) restricting cross-examination of that witness on the extent of his multiple personality disorder. We conclude the trial court properly exercised its discretion regarding each of these points. We therefore affirm the convictions for perjury.

All four charges arose out of Cardenas-Hernandez's testimony in a John Doe proceeding that two police officers, Sergeant Mark Bradley and Detective Mary Ricksecker, committed misconduct in connection with the search of his home and arrest on drug charges in Case No. 91-CF–518, Dane County Circuit Court. After Cardenas-Hernandez entered a plea of guilty in

(a) A court;

(b) A magistrate;

(c) A judge, referee or court commissioner;

(d) An administrative agency or arbitrator authorized by statute to determine issues of fact;

(e) A notary public while taking testimony for use in an action or proceeding pending in court;

(f) An officer authorized to conduct inquests of the dead;

(g) A grand jury;

(h) A legislative body or committee.

(2) It is not a defense to a prosecution under this section that the perjured testimony was corrected or retracted.

78

that case and was sentenced to six years in prison, he wrote to Judge Angela Bartell on September 14, 1993, requesting a John Doe investigation of the officers' misconduct. At the John Doe proceeding on December 23, 1993, Cardenas-Hernandez testified under oath that Bradley lied when he reported that the money he found in Cardenas-Hernandez's wallet upon his arrest was prerecorded; and that Ricksecker stole $3,300 from a lock box in his home when she searched his home pursuant to a search warrant on April 3, 1991. We explain more facts below as we discuss each issue.

### CRIMINAL DEFAMATION—§ 942.01, Stats.

Cardenas-Hernandez moved to dismiss the two defamation charges on the ground that his testimony at the John Doe proceeding was absolutely privileged under § 942.01(3), Stats., which provides:

(3)   This section does not apply if the defamatory matter was true and was communicated with good motives and for justifiable ends or if the communication was otherwise privileged.

The court denied the motion, concluding that there is not an absolute privilege for testimony in a judicial proceeding when the intent is to abuse the process. In denying the motion for reconsideration, the court ruled that privilege in a criminal defamation action is conditional, not absolute, and that Cardenas-Hernandez had abused the privilege because his actions were in reckless disregard of the truth or falsity of his statements and served no justifiable ends.

On appeal, Cardenas-Hernandez repeats his contention that testimony in a judicial proceeding is absolutely, rather than conditionally, privileged and therefore, by the express terms of § 942.01(3), Stats.,

the criminal defamation statute does not apply to his conduct. The State agrees with Cardenas-Hernandez that the trial court erred in concluding that Cardenas-Hernandez's statements were conditionally privileged. It also agrees that statements made during investigatory and judicial proceedings are absolutely privileged in a civil action and therefore acts of perjury may not form the basis for a civil action for damages. *See Radue v. Dill*, 74 Wis. 2d 239, 241, 246 N.W.2d 507, 509 (1976). However, the State contends that the court reached the right result because there is no privilege for perjurious statements in a criminal defamation action. Resolution of this issue requires us to interpret § 942.01, an issue of law which we review de novo. *State v. Fouse*, 120 Wis. 2d 471, 476, 355 N.W.2d 366, 369 (Ct. App. 1984).

Although we have not addressed the question of absolute privileges under § 942.01(3), STATS., or the question of the relationship between § 942.01(3) and perjury, we have construed § 942.01(3) in the context of a conditional privilege. In *State v. Gilles*, 173 Wis. 2d 101, 496 N.W.2d 133 (Ct. App. 1992), the defendant argued that the trial court erred in failing to give a jury instruction on the conditional privilege for publication of information to one with a common interest in the subject matter. This conditional privilege was recognized in RESTATEMENT (SECOND) OF TORTS § 596 (1976), and adopted in a civil defamation action in *Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 440 N.W.2d 548 (1989). *Gilles*, 173 Wis. 2d at 108–09, 496 N.W.2d at 136. We concluded that § 942.01(3) was ambiguous because of "the unexplained reach" of privileged communication under the subsection. We therefore turned to legislative history, and, in particular, to the Legislative Council Comment accompanying the statute:

There are situations in which the communication of defamatory matter is not criminal. . . . The communication is not criminal if the defamatory matter was true and communicated with good motives and for justifiable ends. . . . Nor is the communication criminal if it was otherwise privileged. . . . [T]he common-law privileges relating to defamation are preserved. In general they are the same as the privileges relating to civil law defamation. RESTATEMENT OF TORTS, see §§ [sic] 585–612 (1934).

Legislative Council Comment, 1953, § 342.01, STATS. Based on this legislative history, we concluded that "the defense of conditional privilege as recognized in the civil law applies to the crime of defamation." *Gilles*, 173 Wis. 2d at 111, 496 N.W.2d at 137.

█

*Gilles* provides a starting point for our analysis. We conclude that § 942.01(3), STATS., is ambiguous with respect to the application of the absolute privilege in civil defamation actions for perjurious statements made during judicial proceedings. Consulting the same source of legislative history that we found persuasive in *Gilles*, we note that the common law defamation privileges that are preserved in the criminal statute are not limited to conditional privileges but instead are defined as "in general, the same as the privileges relating to civil law defamation."

The RESTATEMENT OF TORTS sections referred to in the Comment, §§ 585–612 (1934), provide witnesses absolute immunity for statements made in judicial proceedings. Section 588 provides that "a witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as part of a judicial

proceeding in which he is testifying, if it has some relation thereto." RESTATEMENT OF TORTS § 588 (1934). The Comment to this section explains that "[t]he witness is subject to the control of the trial judge in the exercise of the privilege. For abuse of it, he may be subject to criminal prosecution for perjury and to punishment for contempt." RESTATEMENT OF TORTS § 588 cmt. a (1934). We consider this to be a persuasive indication that the legislature intended that perjury committed in a judicial proceeding be punished under the perjury statute and that it not be treated as an exception to the absolute privilege for testimony in judicial proceedings that is available in civil defamation actions.

The State advances three arguments why § 942.01(3), STATS., should be interpreted to exclude perjurious statements that are absolutely privileged in civil defamation actions. First, the State argues that because perjury is defined as a crime, "it cannot possibly be criminally privileged." We do not agree that this conclusion inevitably follows from the premise. One could argue just as persuasively that, because perjury is a separate crime, the legislature saw no need to import a special exception for perjury into the civil defamation privileges it was adopting in the criminal defamation statute.

Second, the State also points to case law holding that a defendant's constitutional "privilege" to testify in his or her defense does not include the right to commit perjury. *See State v. Burroughs,* 117 Wis. 2d 293, 305, 344 N.W.2d 149, 156 (1984). This is not a useful analogy. The use of the term "privilege" in the context of discussing certain constitutional provisions does not illuminate how that term is used, as in § 942.01(3), STATS., in the context of defamation. Moreover, as we have noted above, one is "privileged" to commit perjury

in the civil defamation context only in the sense that, if it is done in a judicial proceeding, one may not be sued for defamation damages. One is not "privileged" to commit perjury in the sense that one may avoid a sanction for perjury: the sanction is criminal prosecution under § 946.31, STATS.

Third, the State argues that the reasons for recognizing an absolute privilege in civil defamation actions for statements, including perjury, made in judicial proceedings do not apply to a criminal prosecution for defamation. The public policy behind this privilege is to encourage witnesses to speak freely without fear of civil liability. *Radue*, 74 Wis. 2d at 241, 246 N.W.2d at 509. The State is correct that there is no societal interest in encouraging perjury, and the law of civil defamation does not propose to do so. Rather, because perjury is an offense against the public, it is subject to criminal prosecution even though it may not be the basis for civil liability in a defamation action. *Id*. In the same way, application of the absolute privilege for perjurious testimony in judicial proceedings to the criminal defamation statute does not encourage perjury or leave it unsanctioned.

There may be policy reasons to subject a person who makes a perjurious and defamatory statement in a judicial proceeding to punishment for two distinct offenses. However, our task is to interpret the existing § 942.01(3), STATS. There is nothing in the language of the statute, its legislative history, or any other materials the State has brought to our attention, that suggests that the legislature intended to exclude the absolute privilege for perjurious testimony in judicial proceedings, available in civil defamation actions, from the privileges applicable under § 942.01(3). The Legis-

lative Council Comments' reference to the RESTATEMENT OF TORTS section containing this privilege convinces us that this privilege does apply to the crime of defamation.

## ADMISSIBILITY OF ADA SMITH'S STATEMENTS

*Background*

The record of property recovered from a bedroom in Cardenas-Hernandez's house in Case No. 91 CF 518 states that in a lock box on the top shelf of a closet there were three empty envelopes and five envelopes containing a total of $5,600. Six hundred dollars in bills were located in a dresser. Detective Ricksecker testified that this is what she found when she searched Cardenas-Hernandez's house on April 3, 1991, pursuant to a search warrant. The record also shows that $1,150 was recovered from a safety deposit box at Bank One in Madison on April 4, 1991, pursuant to a separate search warrant.

At the John Doe proceeding, Cardenas-Hernandez testified as follows. He knew that Detective Ricksecker had stolen $3,300 from the lock box because of the three empty envelopes, and because she was the one who broke open the lock box during the search, after his wife said she (wife) did not have the key. Detective Ricksecker took the money out of the box while his wife was in the next room and did not show his wife what she found or give her a receipt. He knew he had $3,300 more in the lock box because he knew that his wife would not have taken the money from those three envelopes and lied to him about it, and his child was too young to take the money. If he had taken the money out of the three envelopes, he would not have left the empty envelopes in the box. He did not know how much money

84

Detective Ricksecker said was in the lock box until he saw her report about five months later, and he told his attorney then. He knew he had $3,300 more in the lock box than Detective Ricksecker reported.

Before trial on the perjury and defamation charges, Cardenas-Hernandez sought to admit three statements made by Assistant District Attorney Ann Smith in proceedings in Case No. 91-CF–518. First, at the bail hearing on April 5, 1995, she stated to the court:

> It also appears that Mr. Hernandez has an ability to post cash bail. Some of the charges arise from the execution of the search warrant on the late evening of April 3rd. During the course of the search warrant execution, over $8,000 cash was found in $100 and $50 bills.

The second statement was made at Cardenas-Hernandez's initial appearance on April 8, 1991, when the subject of bail again came up. ADA Smith argued that Mr. Hernandez had a significant ability to pay "as was indicated to Commissioner Meurer." She stated:

> Over $8,000 in cash was seized pursuant to the execution of a search warrant, all in $50 and $100 bills which is quite interesting given that their 1989 income tax return reflected that they only made gross $8,000, so it appears to me that there may be some access to some other source of funds.

The third statement was made at a hearing concerning Cardenas-Hernandez's request for a reduction of cash bail on July 11, 1991. ADA Smith agreed to some reduction, but argued that there should still be some cash bail. In that context, she stated: "When the Metro Unit executed the search warrant on his home on Lily Drive,

I believe, back in April, they found $8,000 in cash, now, all in $50 and $100 bills, some of it being Metro money that was pre-recorded."

Cardenas-Hernandez wanted to introduce these statements to show Cardenas-Hernandez's state of mind when he testified that Detective Ricksecker stole $3,300 from the lock box; for the truth of the statements; and to impeach Detective Ricksecker's testimony. Cardenas-Hernandez's counsel argued that ADA Smith's statements were not hearsay because they were admissions of a party opponent under § 908.01(4)(b), STATS. The trial court heard the testimony of ADA Smith and Cardenas-Hernandez before ruling on the motion. ADA Smith testified that she had no firsthand knowledge of the amounts she referred to; she would have had a basis for making the statements but she could not recall what it was; and the information she relies on in such situations may be from people who have no firsthand knowledge themselves.

Cardenas-Hernandez testified that he was present for the first and second statements, heard them, remembered them and never forgot them. He did not read the transcripts of the statements until after the John Doe proceeding. Cardenas-Hernandez acknowledged that in letters he wrote prior to the John Doe proceeding accusing Detective Ricksecker of taking the money, including letters to Judge Bartell and the district attorney, he did not mention ADA Smith's statements and he did not mention them in his testimony at the John Doe proceeding. On February 6, 1994, about six weeks after the John Doe proceeding, Cardenas-Hernandez wrote a letter to the judge who presided at the John Doe proceeding "to provide [the judge] with more pieces of information." This letter stated that on February 3, 1994, Cardenas-Hernandez

received the rest of the transcripts of Case No. 91 CF 518, that he read them and "found that on April 5, 1991, ADA Amy Smith told Court Commissioner Todd E. Meurer that on April 3rd, during the course of the search warrant execution, over $8,000 in cash was found in $100 and 50 bills," and that she made the same statement again on April 8 at his initial appearance. Cardenas-Hernandez mentioned ADA Smith's statements again to Court Commissioner Todd Meurer in a letter dated April 16, 1995.

The trial court ruled that the record did not support the contention that ADA Smith's statements were relevant to prove that Cardenas-Hernandez believed in the truth of his statements when he initiated and testified at the John Doe hearing. The court noted that although Cardenas-Hernandez testified he heard her statements and "never forgot them," there was no evidence that these statements were a basis for the accusations he made in initiating and testifying at the John Doe proceeding. Rather, the court concluded, the evidence was clear that it was not until after the John Doe proceeding that he first referred to her comments. With respect to admissibility of ADA Smith's statements to prove the amount in the cash box, the court ruled that they were not admissible because they were argument, not evidence, and they were hearsay.

Evidentiary rulings, particularly rulings on relevancy, are discretionary determinations. *In Interest of Shawn B.N.*, 173 Wis. 2d 343, 366, 497 N.W.2d 141, 149 (Ct. App. 1992). We affirm a trial court's discretionary ruling if it is supported by a logical rationale, is based on facts of record and involves no error of law. *Id.*

*Analysis*

We conclude the trial court properly exercised its discretion in determining that ADA Smith's statements were not relevant to intent, belief or state of mind when Cardenas-Hernandez testified at the John Doe proceeding that Detective Ricksecker stole $3,300 from the lock box in his house. Her statements were not relevant for this purpose if Cardenas-Hernandez did not think of them until after his testimony. When the relevancy of a fact depends upon a foundation, the court determines whether the proponent has presented evidence sufficient to establish that foundation. *See* § 901.04(1), STATS. Here, the trial court found that the evidence did not establish the necessary foundation. That conclusion is supported by the record and is a reasonable one. Although he had the opportunity to do so, Cardenas-Hernandez did not testify that ADA Smith's statements were one of the reasons he believed there was $8,800 rather than the reported $5,600 in the lock box. Although he did testify he "never forgot her statements," the trial court could reasonably consider that vague testimony to be insufficient in view of all the other evidence indicating that he did not think of her statements until he read the transcripts after the John Doe proceeding.

Cardenas-Hernandez's claims that even if the ADA's statements were not admissible to prove his intent or belief, they were admissible to prove that his testimony was true. Her statements are not hearsay as to the amount of money found in his house, Cardenas-Hernandez contends, because they are admissions by a party opponent. Section 908.01(4)(b), STATS., provides in relevant part:

(4) STATEMENTS WHICH ARE NOT HEAR-
SAY. A statement is not hearsay if:

. . . .

   (b)  Admission by party opponent. The state-
ment is offered against a party and is:
    1.  The party's own statement, in either the
party's individual or a representative capacity, or
    2.  A statement of which the party has mani-
fested the party's adoption or belief in its truth, or
    3.  A statement by a person authorized by
the party to make a statement concerning the
subject. . . .

■

   Cardenas-Hernandez claims that all these condi-
tions are met. We agree with the State that ADA
Smith's statements do not fit in either the first or sec-
ond subsection. Although she is representing the State
as an attorney, it does not follow that she is acting in a
representative capacity in the sense of representing
the interests of an entity as a party to litigation. *See,
e.g., North Side Bank v. Gentile*, 129 Wis. 2d 208, 215,
385 N.W.2d 133, 136 (1986) (bankruptcy trustee in rep-
resentative capacity represents interests of all
creditors), and § 803.01(2), STATS. Cardenas-Her-
nandez provides no authority for applying this
subsection to an attorney representing the State, or
any other client, in litigation.

■

   With respect to § 908.01(4)(b)2, STATS., ADA Smith
is not the "party," and therefore her belief about the
truth of her own statements does not bring them within
that subdivision. If any of the three subdivisions is
applicable, it is the third one, and we turn to that now.
   The State acknowledges that attorneys may under
certain circumstances be considered "persons author-

ized by the party to make a statement concerning the subject" within the meaning of § 908.01(4)(b)3, STATS. The Judicial Council Committee Note to this subdivision states: "Wisconsin cases have implied that evidentiary admissions by attorneys are admissions of the client. . . ." 59 Wis. 2d at R243 (1973). However, the cases cited in the Note all are civil cases and they imply, without deciding, that an attorney's statement may be an "admission." They do not address the scope of the admission in a way that assists our analysis here.[3] The parties therefore turn to federal cases decided under the identical federal rule, FED. R. EVID. 801(d)(2). The State argues that there are only limited circumstances in which the rule has been applied to attorneys for the State in criminal cases, and those circumstances do not exist here. Cardenas-Hernandez counters that federal case law supports the admission of ADA Smith's statements.

We agree with both parties that it is appropriate to turn for guidance to cases decided under the identical federal rule. *See State v. Rogers*, 196 Wis. 2d 817, 830 n.6, 539 N.W.2d 897, 902 (Ct. App. 1995). There is a well-established line of federal cases, predating FED. R. EVID. 801(d)(2), that hold that a statement by a government employee may not be used against the government as an admission in a criminal trial. *See*

---

[3] The complete Note to § 908.01(4)(b)3, STATS., provides:

3. Wisconsin cases have implied that evidentiary admissions by attorneys are admissions of the client, *Longville v. Leusman*, 48 Wis. 2d 251, 258, 179 N.W.2d 823, 826 (1970); *Schultz v. Mueller*, 39 Wis. 2d 216, 220, 159 N.W.2d 63, 65 (1968); *H. & R. Truck Leasing Co. v. Allen*, 26 Wis. 2d 158, 162, 131 N.W.2d 912, 914 (1965); however, the authority to make such evidentiary admissions must be established, 7 Am. Jur. 2d *Attorneys at Law* § 122 (1963).

59 Wis. 2d at R243 (1973).

*United States v. Prevatte,* 16 F.3d 767, 779 n.9 (7th Cir. 1994); *United States v. Kampiles,* 609 F.2d 1233, 1246 (2d Cir 1980); *United States v. Pandilidis,* 524 F.2d 644, 650 (6th Cir. 1975); *United States v. Powers,* 467 F.2d 1089, 1095 (7th Cir. 1972); *United States v. Santos,* 372 F.2d 177, 180 (2d Cir. 1967); *United States v. Durrani,* 659 F. Supp. 1183, 1185. (D. Conn. 1987).[4] A number of courts have held that the enactment of FED. R. EVID. 801(d)(2) does not alter this rule. *See also* WEINSTEIN'S FEDERAL EVIDENCE § 801.30[2] at 801–57 (2d ed. 1997). The rationale for the rule is that, "because the agents of the Government are supposedly disinterested in the outcome of the trial and traditionally unable to bind the sovereign, their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party." *United States v. Kampiles,* 609 F.2d 1233, 1246 (7th Cir. 1979).

Cardenas-Hernandez argues that the rule against treating statements of government agents or employees as admissions of the government does not apply here, because, as an attorney for the State, ADA Smith was "authorized to assert the State's official position" and was "obligated to pursue and represent the truth." Cardenas-Hernandez relies on *United States v. Morgan,* 581 F.2d 933 (D.C. Cir. 1978). In *Morgan,* the

---

[4] These cases have primarily focused on FED. R. EVID. 801(d) (2)(D), which is identical to § 908.01(4)(b), STATS., which provides in relevant part:

4.  A statement by the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship, . . .

The parties do not distinguish between § 908.01(4)(b)3 and 4, STATS., in their arguments. We assume without deciding that for purposes of this opinion any differences in the two subdivisions are not relevant.

court considered FED. R. EVID. 801(d)(2)(B), the subsection that applies where the party-opponent has "manifested his adoption or belief in [the statement's] truth." Morgan wanted to use the police officer's affidavit that supported the search warrant to establish that another person lived in the house and was selling drugs. *Morgan*, 581 F.2d at 935. The affidavit averred that the officer had been advised by an informant that the other person lived in the house and had sold drugs to the informant. *Id.* at 935 n.5. The district court did not permit the use of the police officer's affidavit and the appellate court reversed. The court reasoned that the line of cases we discussed in the preceding paragraph did not apply in this situation because the affidavit was more than the "mere out-of-court assertions by a government agent":

> We do not decide that just *any* statement the informant might have made is admissible against the government. We decide only that where, as here, the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay.

*Morgan*, 581 F.2d at 938. *Accord United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994).

We agree with Cardenas-Hernandez that, as an attorney for the State making in-court statements, ADA Smith may be in a different position than government agents and employees making out-of-court statements. However, we do not agree with Cardenas-Hernandez that *Morgan* supports this position. We have already explained that the subsection involved in *Morgan*—party-opponent has manifested belief in

truth of statement—does not apply here. ADA Smith is the person who made the statement that Cardenas-Hernandez seeks to admit. She is not manifesting the government's adoption or belief of the truth of another's statement. We also observe that in *Morgan* the government's manifestation of belief in the trust-worthiness of the proffered statement was expressed through a sworn statement, a fact critical to the court's conclusion and one not present in this case.

There is a more pertinent line of federal cases in which courts have considered whether an attorney's statement in argument may be admitted as an admission of a party opponent in a subsequent criminal trial. The first of these cases, *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984), concerned the statement of a defense attorney in opening argument in which he described the expert testimony the defense was going to present and described the defendant's wife's role in certain incidents. A mistrial occurred before the defense put on its case. *McKeon*, 738 F.2d at 28. During the second trial's opening argument, the same defense attorney described the wife's role in a manner that was inconsistent with that described in the first trial, and omitted all reference to the expert. *Id.* The prosecution wanted to introduce the opening statements from the first trial as an admission of the defendant and relevant to the consciousness of guilt, and the district court permitted that. *Id.* at 29.

In affirming, the appellate court first looked to civil cases, where admissions of a party's attorney have been considered admissions against the party under certain circumstances. The court decided that there was not and should not be a per se rule against the use of opening statements in subsequent criminal trials, because that "would invite abuse and sharp practice . . .

and also weaken confidence in the justice system itself by denying the function of trials as truth-seeking proceedings." *McKeon*, 738 F.2d at 31. However, the court also decided that the evidentiary use of such statements had to be carefully circumscribed in order to "avoid trenching on other important policies." *Id.* at 32. These are: (1) free evidentiary use of such statements could cause delay and diversion from the real issues and exposure to evidence that is otherwise inadmissible and prejudicial; (2) inferences drawn from inconsistent arguments may be unfair given the government's burden of proof in a criminal case; (3) there may be interference with legitimate and vigorous advocacy; (4) innocent factual explanations of apparent inconsistencies may require the presentation of evidence that interferes with attorney-client privilege or the defendant's right not to testify; and (5) counsel's need to testify may result in disqualification. *Id.*

To address these concerns, the *McKeon* court spelled out the requirements for the admission of such statements as evidence. First, the trial court must be satisfied that the prior argument involves an assertion of fact that is inconsistent with the assertion at a later trial, and the inconsistency must be "clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial." *McKeon*, 738 F.2d at 33. Second, the trial court must determine that the statements of counsel were such as to be the equivalent of testimonial statements by the defendant; there must be something beyond the attorney-client relationship to show participation by the defendant. *Id.* Third, the trial court must, in a hearing outside the jury, determine that the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation does not exist. If opposing

inferences are of equal weight, or the preponderance of evidence favors the innocent explanation, the prior statement should be excluded. *Id.*

The parties bring two cases to our attention in which the limitations established in *McKeon* were addressed in the context of the prosecutor's argument. In *United States v. Salerno*, 937 F.2d 797, 810–812. (2d Cir 1991), *rev'd on other grounds*, 505 U.S. 317 (1992), the second circuit decided that the jury should be permitted to hear that the government, in its indictment, opening and closing in a prior related case, had described the defendant's role in a bid-rigging scheme in a manner inconsistent with its assertions of what the evidence showed in the case.[5] The court relied on its decision in *McKeon* and did not discuss the line of cases that did not consider the statements of government employees to be admissions of the government for purposes of FED. R. EVID. 801(2)(d).

In *United States v. DeLoach*, 34 F.3d 1001 (11th Cir. 1994), the court did not expressly adopt the approach in *McKeon*, but decided that the statements the defense sought to admit—the prosecutor's comments in closing argument of a prior trial concerning the same incidents but not the same defendant—did not in any event meet the requirements of *McKeon*. *DeLoach*, 34 F.3d at 1005. The court concluded that the statements were not the equivalent of assertions of fact but were advocacy regarding witness credibility and inferences to be drawn—functions expressly excluded in *McKeon*—and the comments were not clearly inconsistent with the evidence presented in this trial. *Id.* at 1005–06. *See also United States v. Blood*, 806 F.2d

[5] The second circuit reversed on other grounds but addressed this issue because a retrial was likely. *United States v. Salerno*, 937 F.2d 797, 811 (2d Cir. 1991).

1218, 1221 (4th Cir. 1986) (Use of term "insurance" by government attorney in opening statement and voir dire were inadvertent and not an admission of fact.").

The State argues that ADA Smith's statements are inadmissible under *McKeon* because they are not inconsistent with the evidence presented by the government in this trial. ADA Smith's statement in the prior proceedings, the State contends, was that Cardenas-Hernandez had access to funds as evidenced by the amounts recovered when he was arrested, and the precise location was not important. Therefore, she did not separately distinguish between the $1,150 recovered from the safe deposit box a day after the search of the house, the $46 taken from his wallet at the police station, the $600 found in a drawer in the house, and the $5,600 found in the lock box in his house. According to the State, that total—$7,401—makes her reference to $8,000 roughly accurate. Cardenas-Hernandez disagrees and focuses on the reference to the search of the house in ADA Smith's statements to show that her statement of the amount found in the house is inconsistent with Detective Ricksecker's testimony at trial that $6,200 was found in the house—$600 in a dresser drawer and $5,600 in the lock box.

We find the caution expressed in the federal case law against treating unsworn statements of government employees as admissions against the government to be well-grounded. In addition, although not all of the policies underpinning the approach adopted by the *McKeon* court are present where the proffered statements are those of a prosecutor rather than a defense attorney, some of the policies are relevant in both contexts. We are persuaded by the combination of these two lines of cases that statements made by a prosecutor, not under oath, in a prior court proceeding may be

considered, for evidentiary purposes, as admissions under § 908.01(4)(b)3, STATS., only in very restricted situations. However, we find it unnecessary to define those precisely in this case. Even if we were to adopt the *McKeon* standard for such situations as Cardenas-Hernandez contends we should, we would decide that the trial court could reasonably conclude that this subsection was not applicable and therefore ADA Smith's statements were hearsay when offered to prove how much was in the lock box or to impeach Ricksecker's testimony.

We reach this conclusion because we agree with the State that ADA Smith's prior statements could reasonably be viewed as not clearly inconsistent with Detective Ricksecker's testimony. Cardenas-Hernandez's testimony at the John Doe proceeding, which was the basis for the perjury charges, was that Detective Ricksecker stole $3,300 from the $8,800 in the lock box in his home. Although the location of the amount discovered was unimportant when ADA Smith argued about Cardenas-Hernandez's access to funds, the total amount was important to that argument. It is therefore at least as reasonable to view her remarks as referring to all the funds recovered pursuant to both warrants as it is to view her as concerned only with what was found in the house pursuant to the first search warrant. Under *McKeon*, the existence of equally reasonable inferences would preclude the use of these statements. *See McKeon*, 937 F.2d at 33.[6]

---

[6] We do not discuss the other requirements for admissibility under *State v. McKeon*, 738 F.2d 26 (2d Cir. 1984), because it is unnecessary.

## ADA KOOS' STATEMENT

James Lowery testified for the State that he met Cardenas-Hernandez at Waupun Correctional Institution; that he assisted Cardenas-Hernandez with the John Doe request; and that Cardenas-Hernandez confessed to him that the John Doe was a sham intended to harass the police, obtain the return of property and create an issue for appeal. Cardenas-Hernandez wanted to admit a transcript in a 1986 criminal case against Lowery in which a Kenosha County assistant district attorney, William Koos, in the context of arguing against Lowery's motion to withdraw his guilty plea, stated that Lowery was "incredible," "a con artist," "amoral" and "manipulative." The State argued against its admission on a number of grounds. Among other grounds, the State argued that this statement was not relevant because it was made ten years ago, during which time Lowery has been in prison undergoing treatment, and there was no basis for concluding that ADA Koos' statement was probative of any issue in this trial. The State also argued that the possibility of prejudice and confusion outweighed any marginal relevance the statement might have. Finally, the State argued that the statement was character evidence and the foundation for such evidence under § 904.05(1), STATS., had not been met.

The trial court denied the motion for several reasons. One reason was that ADA Koos' statement was hearsay, and not an admission of a party opponent because it was simply argument. Also, the statement was not probative of Lowery's truthfulness.

We conclude the trial court properly exercised its discretion in excluding ADA Koos' statements. An attorney's advocacy in argument regarding the credi-

bility of a witness is not an admission of a party opponent under *McKeon*, 738 F.2d at 33. Moreover, given the nature and circumstances of the statement and the ten-year time lapse, the court could reasonably conclude they were not relevant to Lowery's credibility in this trial.

## CROSS-EXAMINATION OF LOWERY

On direct examination, Lowery acknowledged that he had been diagnosed with a mental illness described as a multiple personality disorder, but that the disease did not cause him to be unable to tell the truth about the matters in this case. Defense counsel cross-examined him about the disorder. Lowery answered questions about the nature of his disorder, explained that he has thirty-two different personalities, and generally explained how they function. Lowery testified that it was always James Lowery who spoke with Cardenas-Hernandez. The State objected when defense counsel began to ask about particular personalities besides James Lowery. Defense counsel explained he wanted to do this in order to "summon" other personalities and thereby demonstrate to the jury that Lowery's disorder was not under control. Defense counsel said he wanted "to talk to each personality."

The trial court stated that the relevancy of Lowery's disorder was that Lowery's various personalities might surface and cause confusion, and defense counsel could ask certain questions to show Lowery made inconsistent statements and could ask about his treatment and whether his disorder was under control. However, the court did not permit defense counsel to attempt to summon other personalities in order to show the jury that Lowery did not have control of his disorder. The court reasoned that in the absence of any

expert testimony, it did not know whether other personalities could be summoned in this way; it was concerned about the impact on Lowery; and there was no showing of the relevance of summoning all the personalities.

We conclude that the trial court properly exercised its discretion in limiting Lowery's cross-examination in this way. Defense counsel was proposing an extensive course of cross-examination without any foundation that would establish for the court that it would "work," i.e. that defense counsel actually could summon all the personalities or that, if he could, it would add to the jury's ability to assess Lowery's credibility.

In summary, we reverse the two convictions for criminal defamation because we conclude that the absolute immunity in civil defamation actions for statements, including perjury, made in judicial proceedings applies under § 942.01(3), STATS. We affirm the two convictions for perjury because we conclude the trial court properly exercised it discretion in excluding the statements of ADA Smith and the transcript of ADA Koos' statements, and in limiting the cross-examination of Lowery.

*By the Court.*—Judgment affirmed in part; reversed in part.