STATE of Wisconsin, Plaintiff-Respondent-Cross Petitioner,

v.

Luis CARDENAS-HERNANDEZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–3605–CR. Oral argument May 27, 1998.—Decided June 30, 1998.*

(Also reported in 579 N.W.2d 678.)

For the defendant-appellant-petitioner there were briefs by *Robert T. Ruth* and *Ruth Law Office*, Madison and oral argument by *Robert Ruth*.

For the plaintiff-respondent-cross petitioner the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. This case raises two issues for review:

(1) Whether the circuit court erroneously exercised its discretion when it refused to admit into evidence in a criminal proceeding statements made by an assistant district attorney to the circuit court during preliminary proceedings in a prior criminal prosecution; and

(2) Whether the absolute civil privilege for defamatory statements made in judicial proceedings applies in a criminal prosecution for defamation under Wis. Stat. § 942.01 when the statements are perjurious as well as defamatory.

¶ 2. This case is before the court on cross-petitions for review of a published opinion of the court of appeals, *State v. Cardenas-Hernandez*, 214 Wis. 2d 71, 571 N.W.2d 406 (Ct. App. 1997). The court of appeals affirmed in part, and reversed in part, the judgment of conviction entered by the Circuit Court for Dane County, Stuart A Schwartz, Judge, against the defendant, Luis Cardenas-Hernandez. The court of appeals affirmed the defendant's conviction on two counts of perjury in violation of Wis. Stat. § 946.31, rejecting the defendant's argument that the circuit court erroneously exercised its discretion by refusing to admit into evidence statements made by the assistant district attorney in a prior criminal proceeding. The court of appeals reversed the defendant's conviction on two counts of criminal defamation, in violation of Wis. Stat. § 942.01, holding that statements made by the defendant during a John Doe proceeding are absolutely privileged.

¶ 3. The relevant facts of this case are somewhat complicated and involve three separate but related court proceedings. In April 1991, the defendant was arrested and charged with various drug offenses. On April 3, 1991, police officers executed a search warrant

on the defendant's home. During the search of the defendant's home, Detective Mary Ricksecker discovered and seized a lock box and its contents. Detective Ricksecker listed the contents of the lock box as $5,600 cash. Detective Ricksecker also reported that she discovered and seized another $600 from a dresser in the defendant's home. Sergeant Mark Bradley further reported that when the defendant's clothing was later searched at the police station, money prerecorded as part of a drug sting operation conducted earlier that same day was found in the defendant's wallet.[1]

¶ 4. The defendant ultimately pled no contest to the drug charges and received a six-year prison sentence. After his conviction, however, the defendant wrote a letter to Dane County Circuit Court Judge Angela B. Bartell, requesting a John Doe proceeding to investigate alleged misconduct by Detective Ricksecker and Sergeant Bradley. Based on the defendant's letter, Dane County Circuit Court Judge Robert A. DeChambeau conducted a John Doe proceeding pursuant to Wis. Stat. § 968.26 to determine whether further action was necessary. During the John Doe hearing, the defendant testified under oath that Sergeant Bradley had lied both when he reported that money he had found in the defendant's wallet had been prerecorded and when he reported the defendant's home was less than 1,000 feet from a day care center.[2] The defendant

---

[1] In separate searches, the officers discovered and seized $5,600 in cash from the defendant's lock box and $600 in cash from a dresser in the defendant's home on April 3, 1991 and $1,150 in cash from a bank safety deposit box on April 4, 1991. In total, the officers seized approximately $7,350 in cash from the defendant.

[2] The defendant faced enhanced penalties in a drug case under Wis. Stat. § 161.495 because Sergeant Bradley reported

also testified that Detective Ricksecker had stolen $3,300 from the lock box in the defendant's home when she searched it pursuant to the search warrant on April 3, 1991. After conducting the John Doe proceeding, Judge DeChambeau determined that no further action was necessary.

¶ 5. The State subsequently charged the defendant with two counts of perjury and two counts of criminal defamation as a result of the defendant's alleged false testimony at the John Doe proceeding accusing the officers of stealing money from the lock box and of lying about his possession of prerecorded money. At the perjury trial, the defendant attempted to admit into evidence statements made by Assistant District Attorney Ann Smith (ADA Smith) who had prosecuted the defendant's original drug conviction. During the preliminary proceedings in the original drug prosecution, ADA Smith repeatedly argued to the circuit court that the defendant likely had the ability to post bail since the officers had found "over $8,000 in cash" when executing the search warrant on the defendant's home.[3] In the perjury trial, the defendant attempted to introduce ADA Smith's statements to cor-

---

that the distance between the defendant's home and the Pooh Bear Day Care Center was less than 1,000 feet.

[3] On April 5, 1991, during a bond hearing in the drug case, Assistant District Attorney Smith asserted to the circuit court:

> [I]t appears that Mr. Hernandez has an ability to post cash bail. Some of the charges arise from the execution of a search warrant on the late evening of April 3rd. During the course of the search warrant execution over $8,000 in cash was found in $100 and $50 bills.

On April 8, 1991, during the defendant's initial appearance, ADA Smith again stated to the court: "I'd like to add that Mr. Hernandez has a significant ability to pay. . . . Over $8,000 in

roborate his claim that $8,800, rather than the $5,600 reported by Detective Ricksecker, was in the lock box when the officers seized its contents on April 3, 1991.

¶ 6. At a pretrial evidentiary hearing in the perjury trial, ADA Smith testified that while she had no first-hand knowledge of the amount of cash found in the defendant's home on April 3, 1991, she normally has a basis for the representations she makes to the court, and that she was sure she had a similar basis for her statements in this case. The defendant testified at the pretrial hearing that he heard ADA Smith's statements regarding the amount the officers seized during the search of his home. The defendant also testified that he never forgot ADA Smith's statements. On cross-examination, the defendant admitted that he never mentioned ADA Smith's statements in the letter he sent to initiate the John Doe proceeding or at the John Doe proceeding before Judge DeChambeau. The circuit court declined to admit ADA Smith's statements in the perjury trial, reasoning that the statements were not evidence, were inadmissible hearsay, and, if offered for the nonhearsay purpose of showing the defendant's intent, were not admissible due to a lack of foundation.

¶ 7. At the circuit court, the defendant also moved to dismiss the defamation charges on the theory that his sworn statements in the John Doe proceeding were absolutely privileged because he made those statements as a witness in a judicial proceeding. The circuit court denied the defendant's motion, concluding

cash was seized pursuant to the execution of a search warrant, all in $50 and $100 bills."

Finally on April 11, 1991, during a separate bail hearing, ADA Smith stated to the court that "when the Metro unit executed a search warrant on [the defendant's] home. . .back in April, they found $8,000 in cash. . . ."

that defamatory statements enjoy only a conditional privilege in a criminal defamation case and that this limited privilege did not apply in this case because the defendant abused the privilege by recklessly disregarding the falsity of his statements. A jury convicted the defendant on two counts of criminal defamation and two counts of perjury. The defendant appealed from the circuit court's judgment of conviction.

¶ 8. The court of appeals reversed the defendant's conviction on two counts of criminal defamation. The court held that the statements made in judicial proceedings are absolutely privileged in a prosecution for criminal defamation. The court therefore concluded that the defendant could not be charged with and convicted of criminal defamation for his statements in the John Doe proceeding.

¶ 9. The court of appeals also affirmed the defendant's conviction for perjury. The court determined that the circuit court could reasonably conclude that ADA Smith's assertions that more than $8,000 was seized during the search of defendant's home was not inconsistent with the officers' statements that $5,600 was found in the defendant's lock box. The court of appeals also determined that the circuit court properly exercised its discretion in determining ADA Smith's statements were not relevant to establish the defendant's intent, belief, or state of mind when he accused the officers of misconduct.

¶ 10. The defendant appeals from the court of appeals' determination that the statements of ADA Smith in the drug case were not admissible in the subsequent perjury case. The State cross appeals, claiming that the court of appeals improperly applied the absolute privilege to the defamatory and perjurious

statements the defendant made during the John Doe proceedings.

¶ 11. The first issue raised in this case is whether the circuit court erroneously exercised its discretion when it refused to admit into evidence in the defendant's perjury trial statements made by ADA Smith to the circuit court during preliminary proceedings in a prior drug case. The defendant argues that ADA Smith's statements were not hearsay and were admissible as admissions of a party-opponent under Wis. Stat. § 908.01(4)(b); that the statements were admissible for the non-hearsay purpose of establishing his state of mind at the time he accused the officers of misconduct; and that the statements were admissible to discredit witnesses who testified at the perjury trial. The defendant additionally argues that to exclude ADA Smith's statements denied him of his right to a fair trial. We address in turn each of the defendant's arguments.

¶ 12. The question of whether to admit evidence is a decision left to the discretion of the circuit court. *See In Interest of Michael R.B.*, 175 Wis. 2d 713, 723, 499 N.W.2d 641 (1993); *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). We will uphold a circuit court's discretionary decision to admit or exclude evidence if the decision has "a reasonable basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." *Pharr*, 115 Wis. 2d at 342 (citation omitted); *see Grube v. Daun*, 213 Wis. 2d 533, 542, 570 N.W.2d 851 (1997).

¶ 13. We are first asked to determine whether a defendant in a criminal proceeding may introduce into evidence as an admission by a party-opponent under

Wis. Stat. § 908.01(4)(b) a statement made by a prosecutor in a prior criminal proceeding. The defendant complains that the circuit court erroneously exercised its discretion in excluding from the perjury trial the in-court statements ADA Smith made during the drug case. The defendant contends that ADA Smith's statements are not hearsay when offered to establish the amount of cash the officers seized from the defendant's home because those statements constitute an admission of a party-opponent (the State) excluded under Wis. Stat. § 908.01(4)(b) from the general hearsay rule. We conclude, as did the court of appeals, that the circuit court properly exercised its discretion in determining that ADA Smith's statements were not admissible as admissions of a party-opponent.

¶ 14. The general rule in Wisconsin is that hearsay is inadmissible as evidence. *See* Wis. Stat. § 908.02. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Wis. Stat. § 908.01(3). A statement, however, is not inadmissible hearsay if the statement is offered against a party to the proceeding and is:

1. The party's own statement, in either the party's individual or a representative capacity, or

2. A statement of which the party has manifested the party's adoption or belief in its truth, or

3. A statement by a person authorized by the party to make a statement concerning the subject, or

4. A statement by the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship. . . .

Wis. Stat. § 908.01(4)(b).[4]

¶ 15. No Wisconsin court has considered whether factual assertions made by an attorney in one criminal proceeding are admissible against the client in a subsequent proceeding under Wis. Stat. § 908.01(4)(b).[5] Except for a few minor grammatical differences, Wis. Stat. § 908.01(4)(b) mirrors FED. R. EVID. 801(d)(2).[6] In

---

[4] The defendant claims that ADA Smith's statements during the drug case meet subsections 2, 3, and 4 of Wis. Stat. § 908.01(4)(b). We agree with the court of appeals that ADA Smith's statements do not fit into subsection 2 of Wis. Stat. § 908.01(4)(b), since no evidence has been offered to show that the State manifested its adoption of or belief in ADA Smith's statements. *See State v. Cardenas-Hernandez*, 214 Wis. 2d 71, 89, 571 N.W.2d 406 (Ct. App. 1997). We therefore focus our inquiry on whether ADA Smith's statements are admissible under the third or fourth subsection of Wis. Stat. § 908.01(4)(b). In this case, whether ADA Smith appeared before the circuit court as a person authorized by the State under subsection 3 or as the State's agent under subsection 4, we apply the same test to determine whether her statements in the drug case were admissible as admissions of a party opponent.

[5] We note that The Judicial Council Committee Note to Wis. Stat. § 908.01(4)(b) states: "Wisconsin's cases have implied that evidentiary admissions by attorneys are admissions of the client. . . ." 59 Wis. 2d at R243 (1973). As the court of appeals pointed out, however, the cases cited in this note "are all civil cases and merely imply, without deciding, that an attorney's statement may be considered an 'admission' of the client." *Cardenas-Hernandez*, 214 Wis. 2d at 90. The cases cited in the note, therefore, do not aid our analysis in this case.

[6] FED. R. EVID. 801(d)(2) provides in pertinent part that a statement is not hearsay if:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by person author-

such situations, Wisconsin courts look to federal cases interpreting and applying the federal rules of evidence as persuasive authority. *See, e.g., State v. Rogers,* 196 Wis. 2d 817, 830 n.6, 539 N.W.2d 897 (Ct. App. 1995); *accord Neylan v. Vorwald,* 124 Wis. 2d 85, 368 N.W.2d 648 (1985); *In re Estate of Kersten,* 71 Wis. 2d 757, 763, 239 N.W.2d 86 (1976).

¶ 16. To guide our analysis of Wis. Stat. § 908.01(4)(b), we therefore turn to federal court decisions interpreting FED. R. EVID. 801(d)(2). Federal courts have concluded that the defendant and the government, as represented by its prosecutors, constitute party-opponents of one another in a criminal case. *See United States v. Kattar,* 840 F.2d 118, 131 (1st Cir. 1988); *United States v. Morgan,* 581 F.2d 933, 937–38 (D.C. Cir. 1978). Federal courts have also determined that an attorney may be the agent of his or her client for purposes of Rule 801(d)(2)(C)–(D). *See United States v. Harris,* 914 F.2d 927, 931 (7th Cir. 1990); *United States v. McClellan,* 868 F.2d 210, 215 n.9 (7th Cir. 1989); *see also United States v. Margiotta,* 662 F.2d 131, 142–43 (2nd Cir. 1981). Accordingly, federal courts applying FED. R. EVID. 801(d)(2) have concluded that statements made by defense counsel during criminal proceedings may be admissible at trial as admissions of the defendant. *See, e.g., Harris,* 914 F.2d at 931; *United States v. McKeon,* 738 F.2d 26, 33 (2nd Cir. 1984).

¶ 17. In *McKeon,* the court considered the admissibility of statements made by a defense attorney in the opening statement in which he described the defen-

ized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,. . . .

dant's wife's role in certain incidents. A mistrial occurred before the defense presented its case. *See McKeon*, 738 F.2d at 28. During the opening statement in the second trial, the same defense attorney described the wife's role in a manner that was inconsistent with that described in the first trial. *See id.* The prosecution sought to introduce the opening statements from the first trial under FED. R. EVID. 801(d)(2) as an admission of the defendant and relevant to the defendant's consciousness of guilt. *See id.* at 29.

¶ 18. The *McKeon* court concluded that the defense attorney's prior opening statements were not per se inadmissible in a subsequent criminal case. *See id.* at 31. To avoid "entrenching upon other important policies," however, the court circumscribed the evidentiary use of such prior statements. *Id.* at 31–33. The court detailed three specific requirements that must be met before a defense counsel's prior statements are admissible as evidence in a subsequent criminal case. First, the circuit court must be satisfied that the prior statement is an assertion of fact that is inconsistent with the assertion at a later trial. *See id.* at 33. The inconsistency in the statements must be "clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial." *Id.* Second, the circuit court must determine that the statements of counsel are the equivalent of testimonial statements by the defendant; there must be something beyond the attorney-client relationship to show participation by the defendant. *See id.* Third, the trial court must, in a hearing outside the jury, "determine by a preponderance of the evidence that the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation. . .does not exist." *Id.* If opposing inferences are of equal weight, or the prepon-

derance of evidence favors the innocent explanation, the prior statement should be excluded. *See id.* Applying these three criteria, the *McKeon* court concluded that the defense counsel's prior opening statements were admissible in the subsequent trial as an admission of his client under FED. R. EVID. 801(d)(2)(B) and (C).

¶ 19. Although the specific inquiry in *McKeon* involved a statement made by a criminal defense attorney, analogous reasoning is applicable to statements made by an assistant district attorney, and federal courts have held that the criteria set forth in *McKeon* apply equally to statements made by such prosecutors. *See, e.g., United States v. DeLoach,* 34 F.3d 1001 (11th Cir. 1994); *United States v. Orena,* 32 F.3d 704, 716 (2nd Cir. 1994); *United States v. Salerno,* 937 F.2d 797 (2nd Cir. 1991), *rev'd on other grounds,* 505 U.S. 317 (1992).

¶ 20. In *Salerno,* the court considered whether a prosecutor's opening and closing statements in a prior criminal case were admissible as admissions of a party-opponent in a subsequent criminal case in which the government presented an inconsistent theory of prosecution. *See Salerno,* 937 F.2d at 810–11. Relying on the reasoning of *McKeon,* the court refused to adopt a per se prohibition on the use of the prosecutor's prior statements in subsequent criminal trials. The *Salerno* court explained:

> To hold otherwise would not only invite abuse and sharp practice but would also weaken confidence in the justice system itself by denying the function of trials as truth-seeking proceedings. That function cannot be affirmed if parties are free, wholly without explanation, to make fundamental changes in the version of facts within their personal knowledge

between trials and to conceal knowledge between trials and to conceal these changes from the final trier of fact.

*Id.* at 811 (quoting *McKeon*, 738 F.2d at 31). Recognizing that "serious collateral consequences" could result from the "unbridled use of such statements," the *Salerno* court circumscribed the use of a prosecutor's prior opening statement in a subsequent criminal trial by applying the three criteria established in *McKeon*. *Id.* Finding that the use of the prosecutor's prior statement satisfied the *McKeon* criteria, the *Salerno* court determined that the statement was admissible in the subsequent criminal trial. *See id.* 811–12. The court concluded that "the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims." *Id.* (quoting *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2nd Cir. 1991)).

¶ 21. We find persuasive the reasoning of *Salerno* and *McKeon*. We therefore refuse to adopt a per se prohibition on the use of prior statements of prosecutors as admissions of a party-opponent under Wis. Stat. § 908.01(4)(b). We agree that to adopt such a rule could invite abuse and sharp practice by prosecutors and could weaken the public's confidence in the justice system itself by denying the function of trials as truth-seeking proceedings. *See Salerno*, 937 F.3d at 811; *cf. McKeon*, 738 F.2d at 31. We also agree, however, that the use of a prosecutor's prior statements must be circumscribed to avoid the possible collateral consequences that could result from unbridled use of such statements. *See DeLoach*, 34 F.3d at 1005–06; *Orena*, 32 F.3d at 716; *Salerno*, 937 F.2d at 811; *cf. McKeon*, 738 F.2d at 31–33.

¶ 22. Although not identical, concerns parallel to those raised by the *McKeon* court exist in admitting into evidence in a criminal trial unsworn statements made by a prosecutor in a prior criminal proceeding. A particular prosecutor called to testify in a subsequent case may be forced to withdraw from that case due to statements that prosecutor made in a prior proceeding. In addition, the relevant issues and applicable burdens may vary from one proceeding to another and could lead the jury to draw unfair inferences from inconsistent statements made by prosecutors in a prior proceeding. Furthermore, pursuing marginal or collateral matters could provoke further time-consuming and distracting litigation and may complicate the subsequent proceeding. Finally, admitting prior statements of a prosecutor could expose the jury to statements that may otherwise be inadmissible or prejudicial and could deter the prosecutor from vigorous advocacy in preliminary proceedings.

¶ 23. To avoid such collateral consequences, we conclude that a court should not admit into evidence in a criminal proceeding a prior statement made by a prosecutor unless the court concludes that the three guidelines established in *McKeon,* and applied in *Salerno, Orena,* and *DeLoach,* are satisfied. Applying those guidelines in this case, we conclude that statements ADA Smith made in the drug case were not admissible in the defendant's perjury trial as admissions of a party-opponent under Wis. Stat. § 908.01(4)(b).

¶ 24. Upon review, we conclude that ADA Smith's statements in the drug case fail the first *McKeon* guideline. As we have explained, before a court admits into evidence a prosecutor's prior statement, the court first "must be satisfied that the prior argu-

ment involves an assertion of fact inconsistent with similar assertions in a subsequent trial." *Salerno*, 937 F.2d at 811 (quoting *McKeon*, 738 F.2d at 33); *see DeLoach*, 34 F.3d at 1005; *Orena*, 32 F.3d at 716. Although ADA Smith's statements to the circuit court in the drug case were factual assertions, those statements were not clearly inconsistent with the State's assertions in the perjury trial.

¶ 25. To persuade the circuit court that the defendant likely could post bail in the drug case, ADA Smith asserted that officers found "more than $8,000" in cash during the execution of the search warrant on the defendant's home. At the perjury trial, Detective Ricksecker testified that she recovered $5,600 from the lock box in the defendant's home. ADA Smith never asserted that more than $5,600 was found in the lock box. Nor did the State ever contend after the drug case that the defendant likely could not post bail. As the court of appeals noted, the more general statement of ADA Smith referred to the amount of cash found in the defendant's entire house, while Detective Ricksecker's testimony referred only to the amount of cash found in the lock box. ADA Smith's assertion that more than $8,000 was found in the defendant's entire home, although inaccurate, is not clearly inconsistent with Detective Ricksecker's testimony in the perjury trial that only $5,600 was found in the defendant's lock box. Although different inferences may be drawn from ADA Smith's statements in the drug case, the factual assertions made by ADA Smith are not clearly inconsistent with the State's position in the perjury case.

¶ 26. We therefore conclude that the circuit court properly exercised its discretion in determining that ADA Smith's statements were not admissible in the

perjury case as admissions of a party-opponent under Wis. Stat. § 908.01(4)(b).

¶ 27. The defendant next argues that the statements made by ADA Smith in the drug case were admissible for the non-hearsay purpose of establishing the defendant's state of mind when he accused the officers of stealing money from his lock box. The defendant contends that he was relying on ADA Smith's statements that over $8,000 was found in his home when he accused Detective Ricksecker of stealing money.

¶ 28. As the court of appeals noted, the admission of contested evidence is dependent upon the presentation of a sufficient foundation establishing the relevancy of the evidence under Wis. Stat. § 901.04(1). At the evidentiary hearing in the perjury case, the defendant testified that although he remembered ADA Smith's statements, he never referred to those statements in his letter to the circuit court or in his testimony in the John Doe proceeding. Because the defendant never cited ADA Smith's statements prior to or during the John Doe proceeding, the circuit court concluded that the evidence did not sufficiently establish the necessary foundation upon which to base the admission of ADA Smith's statements to establish the defendant's state of mind. The circuit court's conclusion is supported by the record and is in accord with accepted legal standards. We will not upset it.

¶ 29. The defendant next argues that ADA Smith's statements should have been admitted into evidence in the perjury trial for the purpose of discrediting witnesses who testified that only $5,600 was in the lock box and that the defendant was lying. If ADA

Smith's statements were offered to discredit those witnesses by showing that there was in fact over $8,000 in the lock box, then the statements were offered to prove the truth of the matter asserted and admission of those statements is barred by the hearsay rule. In addition, since we have concluded that ADA Smith's statements are not admissible as admissions of a party-opponent, those statements cannot be attributed to other witnesses for the purpose of discrediting their testimony at the perjury trial.

██

¶ 30. The defendant additionally argues that to exclude ADA Smith's statements from the perjury trial deprived him of his right to a fair trial. Whether a defendant's right to present a defense was violated is a question of constitutional fact that this court reviews de novo. *See State v. Heft*, 185 Wis. 2d 288, 296, 517 N.W.2d 494 (1994). In reviewing a question of constitutional fact, we accept the circuit court's findings of historical fact, unless those facts are clearly erroneous, but we independently apply those facts to the constitutional standard. *See State v. McMorris*, 213 Wis. 2d 156, 165, 570 N.W.2d 384 (1997).

¶ 31. Citing *Chambers v. Mississippi*, 410 U.S. 284 (1973), the defendant argues that because the right to offer testimony is constitutionally guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, application of the State's rules of evidence to bar ADA Smith's testimony in his perjury trial violates his constitutional rights. The defendant contends that ADA Smith's statements provide powerful exculpatory evidence which must be admitted to guarantee a fair trial. The defendant's reliance on *Chambers* is misplaced.

¶ 32. The Court in *Chambers* did not hold that a defendant is denied a fair opportunity to defend against the State's accusations whenever evidence critical to his argument is excluded. *See id.* at 302. Rather, the Court held only that under the facts presented in that case, the rulings of the trial court deprived Chambers of his right to a fair trial. *See id.* The Court explained: "In reaching this judgment we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Id.* at 302–03. *Chambers* therefore does not create an absolute entitlement to introduce relevant evidence.

██

¶ 33. This court has explained that while a court may not "deny [a] defendant a fair trial or the right to present a defense by the mechanistic application of rules of evidence," *State v. DeSantis*, 155 Wis. 2d 774, 793, 456 N.W.2d 600 (1990), "[c]onfrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect." *State v. Pulizzano*, 155 Wis. 2d 633, 646, 456 N.W.2d 325 (1990). Thus, there is no constitutional right to present irrelevant evidence. *See State v. Jackson*, 188 Wis. 2d 187, 196, 525 N.W.2d 739 (Ct. App. 1994). As we have explained above, ADA Smith's statements in the drug case are hearsay and are not admissible as admissions of a party-opponent under Wis. Stat. § 908.01(4)(b). In addition, the defendant failed to establish a proper foundation upon which to introduce those statements for the non-hearsay purpose of showing his state of mind when he accused the officers of

misconduct. Under the facts of this case, we are unconvinced that the circuit court applied the rules of evidence in a prejudicially mechanistic manner or that to exclude ADA Smith's statements in any way deprived the defendant of his right to a fair trial.

¶ 34. The second issue we address in this case is whether the absolute civil privilege for defamatory statements made in judicial proceedings[7] applies in a criminal prosecution for defamation under Wis. Stat. § 942.01 when the statements are perjurious as well as defamatory. After considering Wis. Stat. § 942.01, its legislative history, and cases interpreting its language, the court of appeals concluded that the absolute privilege against civil liability for statements made in judicial proceedings also applies to bar prosecution for criminal defamation for those statements. *See Cardenas-Hernandez*, 214 Wis. 2d at 83–84. We agree with the analysis and conclusion of the court of appeals.

¶ 35. The defendant was charged and convicted of two counts of criminal defamation, in violation of Wis. Stat. § 942.01(1), for statements he made during the John Doe proceeding. At the circuit court, the defendant moved to dismiss the two defamation charges on the ground that this sworn testimony in the John Doe proceeding was absolutely privileged under Wis. Stat. § 942.01(3). The circuit court denied the

---

[7] Under current Wisconsin law, statements made by witnesses in judicial proceedings are absolutely privileged and cannot be the basis for civil liability for defamation or perjury, if those statements are relevant to the issues in the matter where the testimony is given. *See Spoehr v. Mittelstadt*, 34 Wis. 2d 653, 661, 150 N.W.2d 502 (1967); *Keeley v. Great Northern R.R. Co.*, 156 Wis. 181, 187, 145 N.W. 664 (1914); *Schultz v. Strauss*, 127 Wis. 325, 328, 106 N.W. 1066 (1906); *Calkins v. Sumner*, 13 Wis. *193, *196–97 (1860).

defendant's motion. The court of appeals reversed the defendant's convictions for criminal defamation, concluding that the defendant's statements were absolutely privileged. On appeal, the State argues that no privilege from criminal prosecution exists for statements made in a judicial proceeding that constitute both defamation and perjury. Resolution of this issue requires the court to interpret the language of Wis. Stat. § 942.01 and to consider the scope of the application of the common law privilege for statements made in judicial proceedings.

¶ 36. Statutory interpretation is a question of law. *See Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996); *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). This court reviews questions of law independent of the decisions of the circuit court and the court of appeals. *See Jungbluth*, 201 Wis. 2d at 327. The ultimate goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *See Stockbridge Sch. Dist.*, 202 Wis. 2d at 219. To achieve this goal, we first look to the plain language of the statute. *See Jungbluth*, 201 Wis. 2d at 327. If a statute is unambiguous, this court will apply the ordinary and accepted meaning of the language of the statute to the facts before it. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 57, 531 N.W.2d 45 (1995). If a statute does not clearly set forth the legislative intent, we may look at the history, scope, context, subject matter, and object of the statute. *See id.*

¶ 37. We therefore first look to the language of Wis. Stat. § 942.01 to determine whether it clearly sets forth the intent of the legislature. The pertinent ele-

ments of criminal defamation under Wis. Stat. § 942.01 are:

(1) Whoever with intent to defame communicates any defamatory matter to a third person without the consent of the person defamed is guilty of a Class A misdemeanor.

(2) Defamatory matter is anything which exposes the other to hatred, contempt, ridicule, degradation or disgrace in society or injury in the other's business or occupation.

(3) *This section does not apply* if the defamatory matter was true and was communicated with good motives and for justifiable ends or *if the communication was otherwise privileged.*

(Emphasis added.)

¶ 38. The plain language of Wis. Stat. § 942.01(3) provides that criminal defamation does not apply to communications that are "otherwise privileged." The issue in this case then is whether defamatory statements made by witnesses in a John Doe proceeding are "otherwise privileged" under Wis. Stat. § 942.01(3). The term "otherwise privileged" is not defined by statute. Nor does Wis. Stat. § 942.01 explain which privileges are recognized under subsection (3). We agree with the court of appeals that the "unexplained reach" of this privilege renders Wis. Stat. § 942.01(3) ambiguous. *See State v. Gilles*, 173 Wis. 2d 101, 111, 496 N.W.2d 133 (Ct. App. 1992). We therefore turn to the legislative history of this section to ascertain the intent of the legislature. *See Swatek*, 192 Wis. 2d at 57.

¶ 39. In *Gilles*, the court of appeals construed the language of Wis. Stat. § 942.01(3) in the context of a conditional privilege. After finding Wis. Stat.

§ 942.01(3) ambiguous, the court turned to its legislative history and, in particular, to the Legislative Council Comment to the criminal defamation statute, originally enacted as § 342.01, which states:

> There are situations in which the communication of defamatory matter is not criminal. . . .The communication is not criminal if the defamatory matter was true and communicated with good motives and for justifiable ends. . . .Nor is the communication criminal if it was otherwise privileged. . . .[T]he common-law privileges relating to defamation are preserved. In general they are the same as the privileges relating to civil law defamation. See *Restatements, Torts*, sec. 585 to 612 (1934).

5 Wisconsin Legislative Council, *Judiciary Committee Report on the Criminal Code*, comment to proposed § 342.01 at 91 (1953). Based on this Comment, the court of appeals in *Gilles* concluded that the conditional privilege for publication of information to one with a common interest, as recognized in civil defamation actions, also applied in prosecutions for criminal defamation under Wis. Stat. § 942.01. *See Gilles*, 173 Wis. 2d at 111.

¶ 40. As the defendant points out, the Legislative Council Comment indicates that "the common-law privileges relating to defamation" are preserved in Wis. Stat. § 942.01(3) and that, in general, "they are the same as the privileges relating to civil law defamation." In addition, to clarify the common-law privileges relating to civil law defamation, the Comment cites the Restatement of Torts §§ 585–612, which provides absolute immunity to statements made by counsel, parties, and witnesses in judicial proceedings. Section 588, in particular, provides that "a witness is absolutely privi-

leged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto."

¶ 41. We agree with the court of appeals that the language of Wis. Stat. § 942.01, its legislative history, and the cases interpreting it indicate that the legislature intended that the common-law absolute privilege for statements made in judicial proceedings applies to criminal as well as civil defamation:

> There is nothing in the language of the statute, its legislative history, or any other materials the State has brought to our attention, that suggests that the legislature intended to exclude the absolute privilege for perjurious testimony in judicial proceedings, available in civil defamation actions, from the privileges applicable under § 942.01(3). The Legislative Council Comments' reference to the Restatement of Torts section containing this privilege convinces us that this privilege does apply to the crime of defamation.

*Cardenas-Hernandez*, 214 Wis. 2d at 83–84.

¶ 42. The State argues that no privilege should be afforded the defendant's defamatory statements in the John Doe proceedings because it is impossible to separate the perjurious elements from the defamatory elements in those statements. We find this argument unpersuasive. Although the defendant's defamatory words may not be severable from his perjurious words, the individual charges brought by the State are severable. In this case, the defendant was charged and convicted for perjury, in violation of Wis. Stat. § 946.31, for his sworn testimony at the John Doe proceeding.

Section 946.31, unlike § 942.01(3), does not provide an exception for "otherwise privileged" statements. The proper sanction in this case, therefore, was criminal prosecution for perjury under Wis. Stat. § 946.31.[8]

¶ 43. Based on the foregoing, we affirm the court of appeals' decision reversing the defendant's two convictions for criminal defamation because we conclude that the absolute civil privilege for statements made in judicial proceedings applies to criminal defamation under Wis. Stat. § 942.01(3). We also affirm the defendant's two convictions for perjury because we conclude the circuit court properly exercised its discretion in excluding the statements of ADA Smith.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[8] The State additionally argues that public policy considerations do not support recognizing an absolute privilege against prosecution for criminal defamation for statements made in judicial proceedings. Our task in this case is not to weigh public policy but to interpret Wis. Stat. § 942.01. "[T]he Legislature settles and declares the public policy of a state, and not the court." *Hengel v. Hengel,* 122 Wis. 2d 737, 742, 365 N.W.2d 16 (Ct.App.1985) (citing *Borgnis v. Falk Co.*, 147 Wis. 327, 351, 133 N.W. 209 (1911)). In enacting Wis. Stat. § 942.01(3), the legislature apparently concluded that public policy was best served by recognizing such an absolute privilege. We therefore reject the State's argument without further discussion.