# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 15, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

# NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.      2018AP1876-CR**

Cir. Ct. No.  2014CF1320

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RONELL N. HIBBLER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County:  MICHAEL J. PIONTEK, Judge.  *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Ronell N. Hibbler appeals from a judgment convicting him after a jury trial of three drug-related charges and two counts of felony bail jumping and from an order denying his motion for postconviction relief. We affirm the judgment and order.

¶2 Pursuant to information provided by two paid informants,[1] City of Racine police executed a no-knock search warrant shortly after 5:00 a.m. at the home of Hibbler's girlfriend, GS, where he also resided. Hibbler and GS were asleep in a bedroom in which police found $2075 in a dresser drawer, a Samsung flip phone belonging to Hibbler, and $480 in a pocket of Hibbler's pants. GS plausibly accounted for $247 found in the closet. A digital gram scale and a plastic baggie containing what proved to be marijuana were on an end table in the living room. A zipped case containing substances that tested positive for cocaine, crack cocaine, and marijuana was discovered beneath the front porch.

¶3 After Investigator Donald Nuttall read Hibbler his *Miranda*[2] rights, Hibbler acknowledged being aware of the cocaine found in the case under the porch. Nuttall asked if the amount was approximately one ounce; Hibbler responded that it was "about an ounce." Nuttall believed the 42.7 grams of crack cocaine ("the cocaine evidence") found in the case, which had an approximate street value of $4270, was a high amount for personal use and that the amount of marijuana was greater than that for a casual user. Hibbler was charged with

---

[1] Police Investigator Donald Nuttall testified that the two informants were "simple informants" who, unlike confidential informants, have an understanding that "if things come to a full head," such as trial, their identity "would and could be divulged." Here, the two testified openly at trial, but because the parties identify them as "OW" and "DF," we will do likewise.

[2] *See* **Miranda v. Arizona**, 384 U.S. 436 (1966).

possession with intent to deliver cocaine (>15-40 grams), possession with intent to deliver THC (<=200 grams), maintaining a drug-trafficking place, and two counts of felony bail jumping, all as a repeater.

¶4     Hibbler's defense theory was that the drugs were not his and that the informants' credibility was questionable because they were being paid by the police.  The jury found him guilty as charged.  He filed a postconviction motion alleging that the trial court erroneously exercised its discretion regarding a ruling on the cocaine evidence and that he received ineffective assistance of counsel.  He sought either a new trial or a *Machner*[3] hearing.  The trial court denied the motion without requiring a response from the State and without a hearing.  This appeal followed.  Additional facts will be supplied as the issues warrant.

### A.  "Opening the Door"

¶5     Hibbler first argues that he is entitled to a new trial because the trial court erroneously exercised its discretion when it admitted Nuttall's testimony about text messages he viewed between Hibbler and Hibbler's supplier, "PN,"[4] regarding Hibbler purchasing four and one-half ounces of cocaine[5] from PN.  The court ruled that Nuttall's testimony was proper because Hibbler had opened the door to that testimony.  Hibbler contends the error was not harmless.

---

[3]  *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[4]  PN is named at trial but the district attorney advised the court that a matter involving him was still under investigation.  We will follow the parties' lead and use his initials.

[5]  Four and one-half ounces equals approximately 129 grams.

¶6    "[W]hether to admit evidence is a decision left to the discretion of the [trial] court." **State v. Cardenas-Hernandez**, 219 Wis. 2d 516, 525, 579 N.W.2d 678 (1998).  We will uphold its discretionary decision to admit or exclude evidence if the decision has "a reasonable basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." ***Id.*** (citation omitted).

¶7    Investigator James Muller testified that he worked with OW on OW's drug transactions with Hibbler.  He also testified that, based upon his experience in the Metro Drug Unit, it is "very common" for drug dealers to have their phones in other people's names to avoid being traced.  The State did not ask about any text messages.  On cross-examination, however, defense counsel asked:

> Q:    You indicated it's common for drug dealers to use phones that are not registered in their names, correct?
>
> A:    Correct.
>
> Q:    Is it common for them to send texts about "I want to buy drugs" or "How much?", things of that nature?
>
> A:    They often do that also, yes.
>
> Q:    And based on your investigation, when the search warrant was executed, did Mr. Hibbler's cellphone match up with any of these drugs—was there any text indicating that he was dealing drugs?
>
> A:    That I do not know.  I wasn't involved in the evidence collection of the search warrant, and I did not receive any texts from him.

¶8    During a break, the prosecutor informed the trial court that a topic had come up during the recess about text messages:  "Ms. Kuehn [defense counsel] is entering into an area that I've warned her would potentially be

dangerous with regards to other information. In the interview Investigator Nuttall makes reference to having taken off Mr. Hibbler's supplier the day before."

¶9      The prosecutor informed the court that, as the case against PN still was under investigation, "the text messages relating to Mr. Hibbler's conversation with [PN] have not been turned over to the defense." The prosecutor stated that she had cautioned defense counsel that if, in Nuttall's cross-examination, she began going into text messages between PN and Hibbler, "Investigator Nuttall has this information and [he is] going to need to come forth with that information based upon her questions."

¶10     The trial court determined that defense counsel already had opened the door to such information:

> I think the door's open already. The inquiry was made. I have no idea who that was and perhaps counsel doesn't either but you ask questions at your risk. You know, that's up to the State whether you want to explain that or go into that area or not. She [defense counsel] asked about retrieved messages from the cellphone involving drug transactions. I think it's fair game at this point.

¶11     A few witnesses later, the prosecutor called Nuttall to the stand and asked him about text messages he viewed between Hibbler and PN regarding the cocaine purchase. The prosecutor showed the jury about five minutes of Nuttall's videotaped interview of Hibbler at the residence when the search warrant was executed. This exchange between the prosecutor and Nuttall followed:

> Q      Is that a fair and accurate representation [of] the conversation that you had with Ronell Hibbler?
>
> A      Yes, ma'am.
>
> Q      You spoke to Mr. Hibbler about downloading phones?

A     Yes.

Q     And you spoke to Mr. Hibbler about having access to his supplier's phone; is that correct?

A     Yes, it is.

Q     When you looked at the person you identified as Mr. Hibbler's supplier's phone, did you identify any text message that came from Mr. Hibbler's phone number?

A     Yes, I did.

Q     What did you identify the text message to say?

A     There was discussion on an actual price for four-and-a-half ounces of what I determined based on my experience to be four-and-a-half ounces of cocaine.

Q     When did that conversation occur between Mr. Hibbler and the supposed source?

A     It was early on the 23rd, which would be the day before the search warrant execution.

¶12    The State works to fit the prosecutor's follow-up questioning about the text messages into the construct of the "invited response" doctrine, which almost always is used in the context of allegedly improper closing argument. *See, e.g., State v. Wolff*, 171 Wis. 2d 161, 168–69, 491 N.W.2d 498 (Ct. App. 1992). We think the rule can be stated more simply: "A party who opens the door on a subject cannot complain if the opposing party offers evidence on the same subject to explain, counteract, or disprove the evidence." *State v. Harvey*, 2006 WI App 26, ¶40, 289 Wis. 2d 222, 710 N.W.2d 482; *see also State v. Mares*, 149 Wis. 2d 519, 531, 439 N.W.2d 146 (Ct. App. 1989) (where defendant's own cross-examination opens door to line of inquiry, trial court properly may allow prosecutor to ask limited follow-up questions).

¶13     Hibbler then pointed out to the court that "no phone records whatsoever" had been turned over in discovery so the defense "would not have been aware that there would have been any texts or matching phone records" and "had no meaningful notice that the text messages existed." Hibbler does not support his argument that the State was obligated to disclose his own phone records.

¶14     Nor does Hibbler allege a violation of **Brady v. Maryland**, 373 U.S. 83 (1963), where a prosecutor prejudicially withholds exculpatory evidence in its possession. *See* **State v. Harris**, 2004 WI 64, ¶15, 272 Wis. 2d 80, 680 N.W.2d 737. Instead, he argues that the State's failure to disclose to Hibbler his own phone records "flies in the face of" WIS. STAT. § 971.23, which provides, in relevant part, that, "[u]pon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney … [a]ny physical evidence that the district attorney *intends to offer in evidence at the trial*." Sec. 971.23(1)(g) (emphasis added).

¶15     Here, the trial court found that using Hibbler's phone records "wasn't anticipated," that "it wasn't an issue until it became an issue during trial," and that discovery was unnecessary because he would have had access to his own records. As the State's introduction of the text-message evidence was a fair and invited response to defense counsel's query on cross-examination, the court did not erroneously exercise its discretion in admitting the evidence.

B.  Ineffective Assistance of Counsel

¶16     Hibbler argues in the alternative that, if the trial court did not err in ruling that the defense opened the door to the text-message evidence, he is entitled to a new trial because trial counsel rendered ineffective assistance, first, by

7

opening the door and, second, for not objecting to Nuttall's testimony that he had learned from "a source of information" that Hibbler often hid drugs outside the house in case police ever raided the residence. He contends trial counsel failed to listen carefully to Hibbler's recorded statement and to move to exclude testimony of text messages with PN as well as any statement from Nuttall that he knew drugs would be found under the porch, as it came from "an unknown source."

¶17    To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *Thiel*, 264 Wis. 2d 571, ¶19. Deficient performance is constitutionally prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶20 (citation omitted). The circuit court's findings of fact will be upheld unless they are clearly erroneous, but whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law, which we review de novo. *Id.*, ¶21. We need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on one of them. *See Strickland*, 466 U.S. at 697.

¶18    Hibbler contends that trial counsel performed deficiently because she asked a question not knowing if Nuttall's answer would damage Hibbler. Nuttall told Hibbler during the interrogation, "[Y]ou know as well as I know that when I download your phone compared to [PN's] phone, which I also have[,] it is going to match up, you feel me?" While Nuttall does not specifically mention a

text message from PN, trial counsel "should have [been] tipped off" that "something damaging" was on Hibbler's phone about a drug delivery the day before the search. Had she investigated, he argues, she would have crafted her questions more carefully, not made the inquiry at all, or sought a pretrial motion to exclude the information altogether. While the jury already had heard the recorded phone calls concerning the drug transactions, without the text messages, the calls did not suggest that Hibbler was involved in them.

¶19    Hibbler also argues that Nuttall further testified on direct that, based on an identified source of information, there was a "high degree of probability" that drugs would be found outside the house. He asserts that Nuttall's testimony about this "unknown source" allowed for an inference that he had some prior knowledge specific to Hibbler that drugs would be found there. He contends counsel should have objected rather than cross-examine Nuttall about his failure to put that information in the police report or search warrant affidavit:

> Q:    And it sounded to me like you inferred that you knew that drugs may be under the porch but you didn't put it your affidavit; is that fair?
>
> A:    It had been pointed out to me by a source of information as part of the affidavit that Mr. Hibbler often employs hiding drugs outside in case the residence were ever raided by the police.
>
> Q:    Was that put in any police report?
>
> A:    No.

¶20    Hibbler contends Nuttall's testimony cut squarely against his theory of the case that the drugs beneath the porch were not his. He argues that counsel was deficient by: failing to object that information from an unnamed person was inadmissible hearsay and violated his right to confrontation, not carefully listening

to the recording provided after the ***Miranda-Goodchild***[6] hearing, and not seeking a pretrial ruling excluding the testimony.

¶21     Assuming without deciding that counsel did perform deficiently, we turn to whether Hibbler was prejudiced.  He contends counsel's performance allowed the admission of the cocaine evidence which, he asserts, was "devastating" to his case because it gave the jury the false impression that he had just received a large quantity of cocaine from his supplier.  Had the jury not heard that evidence, he argues, there is a "reasonable probability" that the result would have been different—i.e., that he would have been acquitted.

¶22     Hibbler's claim of prejudice essentially tracks his argument made in the context of trial court error that admission of the cocaine evidence was not harmless.[7]  He asserts that before hearing about the text message between him and PN, the jury heard only that he had been party to selling small amounts of drugs.  Hibbler cites the following facts:  out of five buys, two were not recorded, he was not present for one, and the others involved two people; both informants were paid by police and one had eight prior convictions, reasonably calling into question their credibility and motives; the drugs could have belonged to other people in the house;[8] a digital scale was found there but there was no evidence of packaging

---

[6]  *See* ***State ex rel. Goodchild v. Burke***, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

[7]  Despite differences in terminology and which party bears the burden of proof, the test for harmless error is "essentially consistent" with the test for prejudice in an ineffective assistance claim. ***State v. Harvey***, 2002 WI 93, ¶41, 254 Wis. 2d 442, 647 N.W.2d 189.

[8]  Police Officer Robert Ortiz, who assisted in the search, testified that "around ten" people were in the house when he arrived.  Nuttall testified that seven people—GS, Hibbler, and their five children, the two oldest of whom were eighteen and twenty—were there.  Also, during the first transaction between Hibbler and OW, Hibbler and a "Thomas Burton" arrived in GS's van.  OW purchased the drugs from Burton, who GS testified had permission to drive her van.  Pictures of the van's interior showed a digital scale.

materials or that cocaine had been cooked into crack; and no fingerprints or DNA linked Hibbler to the drugs. He contends any doubt the jury reasonably might have had that the large quantity of drugs under the porch belonged to him evaporated once it heard of a plan for him to purchase the four and one-half ounces of cocaine the day before the search warrant was executed.

¶23 We agree with the State that, even without reference to the text messages, the evidence against Hibbler was overwhelming. Two informants testified about the controlled buys with Hibbler. Also, the jury heard/saw audio and video recordings of some of the buys; telephone conversations between DF and Hibbler revealed meetings being set up for the controlled buys; Hibbler affirmed to Nuttall that the amount of drugs found under the porch was "about an ounce"; GS testified that the drugs found at her house were not hers; and Nuttall testified that it was "not likely" that it was Burton who hid the drugs under the porch and that GS told him she had tried to get Hibbler to stop selling drugs. There is not a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thiel*, 264 Wis. 2d 571, ¶20.

¶24 As in his postconviction motion, Hibbler argues here that he was prejudiced by the cumulative effect of his counsel's deficient performance. "[I]n most cases errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial, especially if the evidence against the defendant remains compelling." *Thiel*, 264 Wis. 2d 571, ¶61. To be included in the prejudice calculus, "each act or omission must fall below an objective standard of reasonableness." *Id.* "[W]hether the aggregated errors by counsel will be enough to meet the *Strickland* prejudice prong depends upon the

totality of the circumstances at trial, not the 'totality of the representation' provided to the defendant." *Thiel*, 264 Wis. 2d 571, ¶62.

¶25 Nuttall testified that he gained the tip that Hibbler hid drugs outside the house from "a source of information." We reject Hibbler's suggestion that trial counsel should have objected to an "inference" that it came from "an unknown source." We thus cannot say that, whether an act or an omission, it fell below an objective standard of reasonableness. Moreover, counsel chose the strategy of impeaching Nuttall for not including the information in the search warrant affidavit. That counsel's trial strategy was unsuccessful does not mean it was legally insufficient. *State v. Teynor*, 141 Wis. 2d 187, 212, 414 N.W.2d 76 (Ct. App. 1987).

## C. *Machner* Hearing

¶26 Finally, Hibbler contends that he alleged sufficient facts, which the trial court must assume are true, entitling him to relief and, therefore, an evidentiary hearing on his motion. We disagree.

¶27 "A *Machner* hearing is a prerequisite for consideration of an ineffective assistance claim." *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89. "A defendant is entitled to a *Machner* hearing only when his [or her] motion alleges sufficient facts, which if true, would entitle him [or her] to relief." *Sholar*, 381 Wis. 2d 560, ¶50. "If a defendant's motion asserting ineffective assistance 'does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the [trial] court has the discretion to grant or deny a hearing.'" *Id.* (citation omitted).

¶28 As already discussed, Hibbler argued that defense counsel was ineffective because: (1) she opened the door to Nuttall's testimony as to the text messages between Hibbler and PN, allowing in the cocaine evidence; (2) she failed to object to Nuttall's testimony that he learned that Hibbler hid drugs outside the house; and (3) the cumulative deficient performance prejudiced him. The postconviction court concluded that "[g]iven the totality of the representation provided, which is readily identified in the transcripts, [Hibbler] was not denied his right to the effective assistance of counsel" and "[t]he fact that a particular set of questions may open the door to a prosecutor being able to introduce evidence that would not ordinarily be allowed does not always translate into ineffective assistance of counsel."

¶29 Again, we accept, *arguendo*, that counsel opened the door to the text messages, allowing admission of the cocaine evidence which, Hibbler contends, left the jury "with the untrue impression that [he] had just received a large quantity of cocaine from his supplier." This does not, however, necessarily prove prejudice—i.e., a reasonable probability that he would have been acquitted— because, as already discussed, substantial evidence pointed to his guilt.

¶30 The record conclusively demonstrates that Hibbler is not entitled to relief on his ineffective assistance of counsel claim. The circuit court properly exercised its discretion in denying the motion without a hearing. *Id.*

  *By the Court.*—Judgment and order affirmed.

  This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

13